[L. A. No. 1080.  In Bank.—April 14, 1903.]

FRANK J. MARTIN, Respondent, v. SOLEDAD E. DE ORNELAS et al., Respondents, and J. M. HARPER, Appellant.

APPEAL.—NOTICE—PROOF OF SERVICE—SUPPLY OF DEFECTS—PRE-SUMPTION.—A new affidavit of service of the notice of appeal, which is free from objection, filed by leave to obviate an objection to the original proof of service, together with an admission of due service of the notice, signed by the respondent defendants, obviates all objection to the proof of service. It will be presumed that the reference to the notice of appeal is to the original notice, a copy of which is printed in the transcript.

ID.—UNDERTAKING—JOINT APPEALS—OMISSION OF WORDS.—Where one undertaking in the sum of three hundred dollars is sufficient to cover joint appeals from the judgment and from an order denying a new trial, the fact that the words ''or either of them'' are omitted after the word ''appeals'' in the undertaking does not render it invalid. The promise to pay all damages and costs awarded on the ''appeals'' includes both and each of them, and covers all damages and costs that may accrue on either of the appeals.

GUARDIAN AND WARD—UNAUTHORIZED SUBSTITUTION AND SATISFACTION OF MORTGAGE—RIGHTS OF WARD—FORECLOSURE.—A guardian has no authority, without an order of court, to satisfy a mortgage belonging to the estate of the ward, and to substitute a mortgage to the ward upon other land belonging to the guardian. The ward may elect to pursue either one of such securities, but not both of them; and may sue, by a guardian *ad litem,* to set aside the satisfaction of the original mortgage and to foreclose the same.

ID.—EFFECT OF ELECTION BY WARD—INVALIDITY OF SUBSTITUTED MORT-GAGE—ASSIGNMENT.—The effect of the ward's election to foreclose the original security is to render the substituted mortgage of no effect for want of acceptance by the mortgagee, and the land included therein is freed from the lien thereof. The ward cannot after such election make a valid assignment of the substituted mortgage as against the owner of the land.

ID.—ASSIGNMENT TO OWNER OF LOT FIRST MORTGAGED—LATENT EQUI-TIES—SUBROGATION—BONA FIDE PURCHASER.—The fact that the sub-

stituted mortgage was assigned to the owner of the lot first mortgaged, who had acquired latent equities, cannot give him the right to foreclose the substituted mortgage, nor to claim subrogation by reason of the latent equities, as against a *bona fide* purchaser who took without notice of such equities.

ID.—NEGLIGENCE OF CLAIMANT—SUBROGATION NOT ALLOWED.—The loss accruing to the owner of the lot first mortgaged was the result of his own negligence in not seeing to it that the acts of the guardian were duly authorized; and he will not be permitted to save himself from his own negligence by resort to the equitable doctrine of subrogation at the expense of an innocent purchaser.

APPEAL from a judgment of the Superior Court cf Los Angeles County and from an order denying a new trial. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

Works & Lee, for Appellant.

Conceding that the ward had a right of election between the original and the substituted mortgages, which were alternates, the election made to enforce the Garcia mortgage was final and imperative. (7 Ency. of Pleading, 364; *Rowley* v. *Towsley,* 53 Mich. 329; *McVicker* v, *Filer,* 31 Mich. 309; *Thomas* v. *Watt,* 104 Mich. 201; *Field* v. *Burton,* 49 Mich. 53; *Rodermund* v. *Clark,* 46 N. Y. 354; *Morris* v. *Rexford,* 18 N. Y. 552; *Sanger* v. *Wood,* 3 Johns. Ch. 416; *Dunkle* v. *Elston,* 71 Ind. 585; *Rockford Ins. Co.* v. *Fravelsbad,* 29 Ill. App. 654.) Neither the guardian nor Martin, who was legally cognizant of the wrongfulness of the guardian's acts, is in any condition to retrieve any loss suffered to either of them by reason of such wrongful acts. (*Rowley* v. *Towsley,* 53 Mich. 329, 339.)

Edwin A. Meserve, and C. A. Sumner, for Respondent.

By assuming and agreeing to pay the Garcia note and mortgage, Ornelas became the principal debtor. (Jones on Mortgages, sec. 74; *Daniels* v. *Johnson,* 129 Cal. 415.[1]) "Where a creditor has two funds to which he may resort for the satisfaction of his debt, the one of which is primarily liable, and the other secondarily liable, for the payment thereof, and the creditor makes the money out of the fund secondarily liable, the owner of such fund stands in the position of surety for

[1] 79 Am. St. Rep. 123.

the owner of the primary fund and is entitled to subrogation." (Brandt on Suretyship, 2d ed., sec. 302; *Eddy* v. *Traver,* 6 Paige, 521; 2 White and Tudor's Leading Cases in Equity, pt. 1, note to *Aldridge* v. *Cooper,* 255, 279, 268.) An infant cannot make an election. It can only be made by a court for him. (1 Pomeroy's Equity Jurisprudence, sec. 509.) The mere bringing of an action is not conclusive of election. (*Wells* v. *Robinson,* 13 Cal. 133; *Agar* v. *Winslow,* 123 Cal. 587, 591;[1] *Koke* v. *Blakan,* 44 N. Y. Sup. Rep. 426.)

THE COURT.—This is an action to foreclose a mortgage given by defendant Ornelas and wife to their infant daughter, and subsequently assigned to the plaintiff Martin. The appellant, Harper, was a purchaser of the mortgaged real property after the mortgage was signed, acknowledged, and recorded, and before it was assigned to plaintiff. The judgment was in favor of plaintiff against all the defendants. The defendant Harper appeals from the judgment against him, and from an order denying his motion for a new trial. The plaintiff moved to dismiss the appeals, on the grounds,—1. Of failure to serve notice of appeal on the Ornelases as adverse parties in interest; and 2. Insufficiency of the undertaking on appeal. The motion to dismiss was continued to be heard with the case on its merits, and leave was given to file further proof of service. Since said continuance the appellant has filed a new affidavit of Mr. Downing (who made the previous affidavit of service alleged by respondent to be defective) showing the due service of the notice of appeal, free from any objection. Appellant has also filed a written admission of due service of said notice, signed by said respondent defendants. The notice of appeal, or a copy of it rather, is printed in the transcript, and it will be presumed that the reference in the written admission, as well as in the affidavit to the "notice of appeal in the above-entitled action," relates to the original of said copy so printed in the transcript. This affidavit and admission obviates all objection to the appeal made on account of want of service or absence of proper proof of service. (*Sutter County* v. *Tisdale,* 128 Cal. 180; *Heinlen* v. *Heilbron,* 94 Cal. 636.)

The undertaking in question, after reciting the two appeals,

[2] 69 Am. St. Rep. 84.

concludes as follows: "Now, therefore, in consideration of the premises, and of such appeals, the Fidelity and Deposit Co. of Maryland (a corporation) doth hereby undertake and promise on the part of the appellant that the said appellant will pay all damages and costs which may be awarded against him on the appeals, or on a dismissal thereof, or of either of them, not exceeding the sum of $300, to which amount it acknowledges itself bound." The objection urged to this undertaking is, that the words "or either of them" were omitted after the word "appeals," so that if judgment should go for respondent on one appeal, and against him on the other, no recovery could be had against the sureties. No case is cited to support this objection, and we think it not well founded. The appeals being from the judgment and from an order denying a new trial, one undertaking in the sum of three hundred dollars was sufficient to cover both appeals. (*Bell* v. *Staacke,* 137 Cal. 307, and cases therein cited.) The word "appeals," as used in the undertaking, embraces both, and each of the appeals and damages awarded on either of the appeals is embraced within a promise to pay "all damages" awarded on the "appeals." The undertaking, fairly construed, covers any and all damages and costs that may accrue on either of the appeals. The motion to dismiss the appeals is denied.

The preliminary objections made by respondent to hearing the appeal from the order denying a new trial, because of the absence of specifications of particulars, etc., need not be discussed, for the reason that appellant in his reply brief seems to have practically abandoned his appeal from the order, as his contentions are all directed to the appeal from the judgment.

The appellant contends that the findings do not support the judgment rendered. We think this contention is well founded. The findings show that Manuela, the ward of her father, Ornelas, held a note for twenty-five hundred dollars, executed by one Garcia, and secured by a mortgage upon a town lot, executed by the same party; that said town lot was thereafter conveyed to Ornelas, the guardian, by Garcia; that Ornelas conveyed the said lot to Martin for a consideration; and, without an order of the court authorizing it, attempted, as guardian of the ward, to satisfy of record the Garcia

mortgage on the same lot, and thereafter, as agreed with Martin, Ornelas and his wife signed, executed, and delivered a note and mortgage for two thousand five hundred dollars and interest on a lot in the Alvarado tract, belonging to Ornelas and his wife, to the ward. This mortgage was recorded, and the last-named note and mortgage were intended and given as substitutes for the aforesaid Garcia note and mortgage. The two thousand six hundred dollars paid by Martin for the town lot was applied directly to the payment of Ornelas's debts, and no part of it went to the ward. Subsequent to the giving of the Ornelas mortgage to the ward, the guardian, Ornelas, being again in need of money, attempted, as guardian, without any authority from the court, to satisfy of record the said mortgage given to the minor by himself and wife on the Alvarado lot; and at the same time he and his wife gave a mortgage to a local bank on the same property. This mortgage was subsequently foreclosed, the property bought in by the bank, which thereafter assigned its sheriff's certificate to defendant Harper, who at about the same time bought the lot from Ornelas and wife and obtained a deed from them for the same. Harper paid one thousand seven hundred dollars for the land. Soon after this the friends of the ward obtained the appointment of a guardian *ad litem* for her. Said guardian *ad litem*, in pursuance of an order of court, duly authorizing him thereto, commenced a suit against Martin et al., to set aside the release of the Garcia mortgage and to foreclose the same, and in this suit judgment was rendered against Martin et al., and in favor of said ward, awarding a foreclosure of the Garcia mortgage, a sale of the lot upon which it rested to satisfy the note secured by the mortgage, and a deficiency judgment against Garcia and Ornelas. Appeal was taken by Martin to the supreme court. While this appeal was pending, Martin made a compromise with the guardian *ad litem*, by which it was agreed that Martin should pay the ward three thousand two hundred dollars, and in return the judgment should be reversed and remanded to the trial court, the trial court to enter judgment in Martin's favor, and the minor to assign all her right and title in the Ornelas mortgage to Martin. This compromise was duly approved by the probate court for the minor; and the case was disposed of and the assign-

ment of the mortgage made in accordance therewith. Soon thereafter Martin commenced this suit to foreclose the assigned mortgage. Between the commencement of the suit in foreclosure on behalf of the minor and the date of the compromise, Harper made permanent improvements on the land previously purchased by him, to the extent of one hundred and fifty dollars in value. Martin had full notice of the disposition to be made of the moneys which he paid to Ornelas. Harper had no notice of the arrangement between Martin and Ornelas, or of the disposition of the money paid for the Garcia lot. It is clear from the foregoing statement of facts that the attempted satisfaction of the Garcia mortgage without an order of the probate court authorizing the same was of no validity. (*Jennings* v. *Jennings*, 104 Cal. 150; *Aldrich* v. *Willis*, 55 Cal. 81.) It is equally clear that the minor was in no way bound by the unauthorized attempts of Martin and Ornelas to exchange or substitute another note and another mortgage on another piece of property for the note and mortgage which she held against Garcia. She may have been at liberty to avail herself of either of the two mortgages, but as the second one was intended by the makers as a substitute and satisfaction of the first, if she accepted it at all, she must do so on the terms under which it was given. She did not accept it, however, but, on the contrary, through her guardian *ad litem*, expressly repudiated the arrangement that had been made for her between Martin and Ornelas, and elected to stand by and claim her full rights under the Garcia note and mortgage, when she began her suit to foreclose the same. Having done this, and having followed the case to the supreme court when Martin appealed it, she was bound by such election, and could not thereafter avail herself of the second mortgage. (*Rowley* v. *Towsley*, 53 Mich. 329.) Having once repudiated the second mortgage, it had no further validity, and did not thereafter constitute a lien upon the land, and Harper's title, though obtained subsequent to the date of said mortgage, was no longer affected by it. Indeed, it is doubtful whether the Ornelas mortgage ever constituted a lien upon the premises. It is difficult to understand how there could be a mortgage without a mortgagee; and it is still more difficult to see how the ward could be made a mortgagee without any assent on her behalf to the transaction. But be this

as it may, it is clear that when she had once elected to repudi-
ate the transaction, so far as she was concerned, the second
mortgage was as if it had never been. She then had no fur-
ther right or interest in the second mortgage that she could
assign or that any one could be subrogated to. In this view
of the case it becomes immaterial to determine whether the
satisfaction placed of record as to the Ornelas mortgage was
valid or not.

As to the claim that the Ornelas mortgage should be treated
as valid for the protection of Martin, even though the ward
elected to hold on to the Garcia mortgage, we have this to
say: Harper purchased the land without any notice of Mar-
tin's equities, as is shown by the findings, and, conceding that
the attempted satisfaction of the second mortgage was invalid,
Martin was responsible for the doubtful and uncertain condi-
tion of his own title in the Garcia property. It was the result
of his negligence in not seeing to it that the several acts of
the guardian were duly authorized; and he will not be permit-
ted to save himself from his own negligence by resort to the
equitable doctrine of subrogation at the expense of one who
innocently invested his money without notice of any of these
equities now claimed by him.

Again, it would be inequitable, as against the rights of
Harper, to allow Martin to give the arrangement between
Ornelas and himself any other effect than the parties to it
intended it should have at the time it was entered into. They
intended that the Ornelas mortgage should satisfy the Garcia
mortgage. It is so found. They never intended that the ward
should have the benefit of both those mortgages. What prin-
ciple of equity can be invoked now to give the transaction
a greater scope, a broader effect in Martin's behalf than it
was to have on behalf of the minor? The respondent now
wants both these mortgages held to be in full force and effect
for the protection of his "latent equities" against a pur-
chaser for value who had no notice of those equities. Equity
will not so punish an innocent party that it may reward a
negligent party for his negligence. (*Heyder* v. *Excelsior etc.
Assn.*, 42 N. J. Eq. 403;[1] *Horner's Appeal*, 94 Pa. St. 489;
*City Council* v. *Ryan*, 22 S. C. 339.[2]) In Sheldon on Subro-
gation (2d ed., sec. 43) it is said: "The fact that the loss

[1] 59 Am. Rep. 49.    [2] 53 Am. Rep. 713.

of one who seeks to be protected by the application of the doctrine of subrogation arose from his own negligence, and that the granting of his request would now be prejudicial to other innocent creditors or assignors of his debtor, will be fatal to his claim.'' In this connection it may be well to remember that the payment of the three thousand two hundred dollars was made by Martin long subsequent to the purchase by Harper, and after Harper had improved the place to the extent of one hundred and fifty dollars, and therefore any equities of Martin on account of the payment of this three thousand two hundred dollars arose subsequent to and are subject to Harper's prior equities. These improvements, too, were made after the suit to foreclose the Garcia mortgage was commenced, and while the ward was in the very act of repudiating the whole transaction between Martin and Ornelas, including the second mortgage, which was the outgrowth of that transaction.

The judgment and order are reversed.

McFarland, J., Henshaw, J., Lorigan, J.; Angellotti, J., Van Dyke, J.

SHAW, J., dissenting.—I dissent from the opinion of the majority of the court in this case. There are some facts stated in the findings which are important to the consideration of the case that are not mentioned, or, at all events, not emphasized, in the prevailing opinion. It is shown in the findings that Ornelas and Martin made an agreement for the purchase and sale of the land mortgaged by Garcia to the ward, for the sum of two thousand six hundred dollars, which was its full value; that at the time this agreement was made Martin did not know of the existence of the Garcia mortgage, but shortly afterwards, upon discovering it, there was a futher agreement that Ornelas should execute the mortgage on the land now owned by Harper. It was a part of this agreement that Ornelas should obtain from the probate court an order authorizing him, as guardian of the minor Soledad Ornelas, to release the Garcia mortgage, and to execute to the minor, as security for the original debt, the other mortgage. It further appears that before the transaction was closed and the money paid by Martin to Ornelas,

and some weeks after the agreement to obtain the authority, Ornelas reported to Martin that he had obtained from the court authority to execute the release and mortgage, and that Martin, believing this to be true, closed the deal and paid the money for the benefit of Ornelas. It is to be further noted that the court finds expressly that there was an actual delivery of the second mortgage to the minor.

It is clear from these facts that the giving of the second mortgage was as much, if not more, for the benefit of Martin as for the benefit of the ward.

When the arrangement was thus completed, as the minor was not bound by the release, and the Garcia mortgage was consequently still an outstanding lien upon the land, Martin, in equity, assumed the position of a surety, with Ornelas as the principal debtor and the minor as the creditor. Upon the creation of this relation the right of subrogation accrued to Martin. This right does not depend upon any contract, express or implied, but grows out of the relation of surety and creditor, and the principles of natural justice. (Brandt on Suretyship, sec. 260; *Hidden* v. *Bishop*, 5 R. I. 29; *Mathews* v. *Aikin*, 1 N. Y. 595.) From this it follows that the right of subrogation is the same in this case as if the creditor were an adult capable of contracting. The rules regarding subrogation are concisely stated in the Civil Code. ''A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor . . . at the time of entering into the contract of suretyship, or acquired by him afterwards.'' (Civ. Code, sec. 2849.) ''A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal.'' (Civ. Code, sec. 2848.) These sections are but a re-enactment of the well-settled rules of equity on the subject of subrogation or substitution. (Story's Equity Jurisprudence, secs. 495-502; Brandt on Suretyship, sec. 260 et seq.) It would seem that nothing could be clearer than the right of Martin in this case to the benefit of the Ornelas mortgage. The court finds that it was delivered. Delivery implies acceptance, and, it being for the ward's benefit, acceptance is presumed. (Jones on Real Property, secs. 1276, 1282.) Therefore at, or immediately after, the

time when Martin "entered into the contract of suretyship," or bought the land liable for the debt which Ornelas owed, which is the same thing, the minor, as creditor, held a mortgage on the land of Ornelas for the same debt. Martin's right accrued that instant. Whatever right the infant creditor then held to resort to this mortgage for the payment of this debt, whatever "benefit" it then was to her, Martin at once became entitled to himself, under the provisions of section 2849 of the Civil Code. Upon the election of the ward to enforce the mortgage on his land, followed by his payment of the debt, he became entitled to the further right to enforce the remedy, previously possessed by the ward, of foreclosing the Ornelas mortgage. The right which accrued conditionally, upon his becoming surety, then became absolute by the happening of the condition. The creditor is bound to the utmost good faith toward the surety, and is regarded as trustee of the security given to him by the principal debtor. (Brandt on Suretyship, sec. 291.) Under the rules of equity, therefore, the creditor could not take the Garcia mortgage and refuse the Ornelas mortgage, except upon the condition that the Ornelas mortgage should inure to the benefit of the surety. Ornelas was the principal debtor, and he could have no right to complain that his own land was held liable for the debt for the benefit of his surety, although the creditor had elected to pursue the surety, rather than the principal debtor. Martin was a party to the agreement for substitution of the second mortgage, and he paid the consideration to Ornelas, and this created in him rights which equity should not ignore or disregard; and this is more especially true when it is considered that Martin was induced by the fraudulent representation of Ornelas, the principal debtor, to believe that the release was duly authorized by the probate court having jurisdiction of the proceedings in guardianship. The fact that the infant creditor had no right to enforce both mortgages for the payment of her debt, but was required to elect which of the two she would take, to my mind does not affect the right of Martin to subrogation. It is always true in every case of subrogation, where the creditor has a right to resort to either of two funds, both of which are ample for the payment of his debt, that the creditor must elect between the two, and cannot enforce both, the reason being the very obvious one, that the

creditor cannot obtain more than one satisfaction for the same
debt, and when he has obtained satisfaction by resort to one
fund, he necessarily relinquishes all right to the second. It is
also true in every case of subrogation that the title to the
fund not taken by the creditor, the legal right to resort to this
fund, is always in the creditor, and never is in the surety.
But, owing to the necessities of the case, and the desire of the
court of equity to effect justice between the parties, it dis-
regards the legal technicalities and allows the surety to avail
himself of the fund or security formerly held by the creditor
with the same effect as if the creditor had done so. It is true
in almost every case of an application for equitable relief
that the giving of the relief involves a disregard of some legal
obstacle. Thus in a suit for specific performance, the court,
in effect, absolutely nullifies the express statute providing
that land cannot be conveyed except by written contract; and
in a suit to set aside a fraudulent conveyance, equity disre-
gards the legal title and gives the land to the party who in
justice ought to have it. There is no greater evasion of legal
rights required in this case than in those stated. The creditor
had the right to resort to either of the two mortgages. The
surety had paid the full value of the land upon the expecta-
tion that the second mortgage would be a security for the
debt. All the principles of equity and natural justice which
gave rise to the original doctrine of subrogation apply with
equal force to this case, and require that in equity Martin
should have the right to resort to the land of Ornelas, which,
for his benefit as well as that of the ward, was mortgaged for
the principal debt. There can, therefore, be no question that
if Ornelas had not conveyed the land, Martin's right to en-
force the mortgage against him would have been absolute.

It is suggested that because Harper purchased the land
for its full value, and without notice of the equitable rights
of Martin, that, therefore, he took the land freed from this
·burden. I can see no force in this proposition. The mort-
gage was recorded, and there was no valid release. On its face
it purported to be an absolute mortgage for two thousand five
hundred dollars, payable to the minor. Of all this Harper
had notice—constructive notice, it is true, but equally as ef-
fective in law and equity as actual notice. He was not de-
ceived by any act of Martin, or misled in any way by the

existence of Martin's equity. The mortgage was there apparently in full force. The ward had a perfect right to enforce it. The right of Martin to subrogation was in existence at the time he purchased, because at that time Martin had entered into a contract of suretyship, and under section 2849 of the Civil Code his right had accrued. I know of no principle of law or equity by which it can be held that an equitable right to enforce a legal mortgage, duly recorded, cannot be enforced against a subsequent purchaser of the land, because of the fact that the subsequent purchaser, although having notice of the mortgage, had no notice of the equity. The mortgage itself being absolute on its face, the legal right carries with it all equities to enforce it.

There is no claim here that both mortgages are to be enforced in favor of the minor. There is but one debt, and as Martin has paid that debt, he is enforcing the mortgage primarily liable for its payment. It is not claimed that either the ward or Martin could enforce against the Ornelas land any surplus of the debt over and above the amount of the mortgage executed by Ornelas, or over and above the amount which Martin paid on the debt. Something is said about Martin's negligence having in some way estopped him from asserting this mortgage against Harper. If his negligence had created an appearance of security upon which Harper had relied in making his purchase, there might be some force in this suggestion, but it is very manifest that nothing of this kind occurred. The mortgage, as above stated, was upon its face positive and unqualified, and Harper had notice of the fact. There can be nothing in the neglect of Martin in failing to demand proof of Ornelas's authority to make the release which could have the effect of estopping him from pursuing his equitable remedy upon the mortgage.

For these reasons, I think it is clear that Martin had the right to pursue the mortgage which was given, in part at least, for his benefit, and that the judgment should be affirmed.

Beatty, C. J., concurred in the dissenting opinion.

Rehearing denied.