## SOUTHWESTERN SURETY INS. CO. v. KING et al.

No. 8974—Opinion Filed April 9, 1918.

(172 Pac. 74.)

. (Syllabus.)

**Appeal and Error — Replevin —Subrogation — Principal and Surety — Liability of Sureties.**

Mrs. K. sued G. L. K. and W. C. K. in replevin. S. W. Co. became surety for the defendants on the redelivery bond. Judgment was rendered for Mrs. K., and G. L. K. and W. C. K. appealed to the Supreme Court and gave a supersedeas bond to stay execution of the judgment, with J. E. L. and F. E. B. as sureties. S. W. Co. did not procure or consent to the giving of the supersedeas bond and stay of execution. The judgment was modified and affirmed in the Supreme Court. Suit was then commenced by Mrs. K. against the principals and sureties on both bonds. Held: (1) That Mrs. K. was entitled to a joint and several judgment against the principals and sureties on each bond. (2) As between the sureties on the respective bonds, the sureties on the supersedeas bond were primarily liable. and the surety on the redelivery bond, upon payment of the judgment, is entitled to .be subrogated to the rights of the judgment creditor as against the sureties on the supersedeas bond.

Error from District Court, Grady County; Will Linn, Judge.

Actions by Mrs. Ardie King, administratrix, against G. L. King and another and the Southwestern. Surety Insurance Company, a corporation, and against J. E. Lucas and F. E. Baker, which were consolidated. There was a judgment for plaintiff against the several defendants, and for defendants Lucas and Baker against the Southwestern Surety Insurance Company, which brings error. Judgment for plaintiff affirmed, but judgments against the Southwestern Surety Insurance Company reversed.

G. A. Paul, for plaintiff in error.

Riddle & Hammerly, for defendant in error King.

Chas. West, for defendant in error Lucas.

Bond, Melton & Melton, for defendant in error Baker.

RAINEY. J. Mrs. Ardie King. as administratrix of the estate of her deceased husband, instituted an action in replevin in the superior court of Grady county, Okla., against G. L. King and W. C. King, to recover possession of some mules which had been mortgaged to her deceased husband, as security for a debt evidenced by a note. At the commencement of the action a writ of replevin was issued and placed in the hands of the sheriff, who levied upon some of the mules described in the petition. Thereupon, the defendants G. L. King and W. C. King, as principals, and the Southwestern Surety Insurance Company, as surety, executed a redelivery bond in the sum of $1,250, conditioned as required by law. The trial of this case resulted in a judgment for Mrs. King, as administratrix, for · possession of the

property or its value in the sum of $1,475. The defendants appealed the case to the Supreme Court, and, for the purpose of staying execution, filed a supersedeas bond in the sum of $1,500, with J. E. Lucas and F. E. Baker as sureties thereon. This court modified and affirmed the judgment of the superior court. See King v. King, 42 Okla. 405, 141 Pac. 788.

The defendants in the replevin action having failed to return the property or to pay the value thereof, as fixed by the court, Mrs. King, as administratrix, instituted two separate suits in the district court of Grady county, Okla., against the defendants G. L. King and W. C. King and their surety, the Southwestern Surety Insurance Company and J. E. Lucas and F. E. Baker, the sureties on the respective redelivery and supersedeas bonds. By agreement the actions were consolidated and tried as one action. At the conclusion of the evidence the plaintiff moved the court for judgment against the defendants and each of them for the amount sued for, and interest and costs. At the same time the Southwestern Surety Insurance Company filed a motion praying that, in the event judgment was rendered in favor of the plaintiffs and against the defendants, the court should also render judgment in its favor against the defendants J. E. Lucas and F. E. Baker. Counsel for the defendants J. E. Lucas and F. E. Baker thereupon prayed the court for judgment in their favor against the Southwestern Surety Insurance Company for the full amount of the judgment which the court might award against them, except the costs of the appeal in the Supreme Court. After taking the case under advisement for several weeks, the court rendered the following judgment:

"It is therefore by the court considered, ordered, and adjudged that plaintiff, Ardie King, as administratrix of the estate of ——, deceased, have and recover judgmen. against the defendants Southwestern Surety Insurance Company, J. E. Lucas, and F. E. Baker and each of them for the sum of eight hundred ninety-four and 39/100 ($894.39) dollars with 10 per cent. interest thereon from October 6, 1911, and the costs of this action, and in addition from the defendants J. E. Lucas and F. E. Baker for the sum of the costs of the appeal to the Supreme Court in the cause No. 3453, King, etc., v. King et al., to which defendant Southwestern Surety Insurance Company excepted at the time, and the defendants, J. E. Lucas and F. E. Baker have and recover judgment against Southwestern Surety Insurance Company for the sum of $894.39 with interest herein recovered against them by the plaintiff above and defendant Southwestern

Surety Insurance Company excepted at the time.

"It is also ordered and adjudged that upon the satisfaction and payment of said judgment by the defendant Southwestern Surety Insurance Company, as herein directed, then said judgment herein rendered in favor of defendants Lucas and Baker shall be satisfied and discharged by the clerk of this court."

Complaining of the judgment in favor of the plaintiff, the surety company contends that there is not any evidence in the record showing whether the conditions of the redelivery bond were complied with by returning the mules, or that a demand was made for their return. Assuming that it was necessary for the plaintiff to prove this breach of the redelivery bond, we have examined the record and find that there was ample testimony authorizing the court to find that the bond was breached in this particular, and that plaintiff had made the demand.

The second proposition argued in the brief of counsel for the surety company is that since Mrs. King, as administratrix, instituted the first action against the sureties on the supersedeas bond only, she could not thereafter bring a joint action against the sureties on the supersedeas and the surety on the redelivery bond. Counsel have evidently misread the record in this respect, for the first action was brought against the principals and sureties on both bonds.

The principal question involved in this appeal is: Are the equities of the sureties on the supersedeas bond superior to the equities of the surety on the redelivery bond, and which surety, if either, is subrogated to the rights of the judgment creditor against the other surety or sureties?

It is generally held that successive sureties on judicial bonds are liable to each other in the inverse order in which they became sureties. Brandt on Suretyship and Guaranty (2nd Ed.) vol. 1, p. 395; Stearns on the Law of Suretyship, § 271; Pingrev on Suretyship and Guaranty (2d Ed.) § 168, p. 191. In such cases the right of sureties to substitution or subrogation is based upon principles of equity and is not a right arising out of any contractual relation. The principles underlying the vast majority of the reported cases are clearly enunciated in the early Ohio case of John W. Hartwell v. Oliver Smith, 15 Ohio St. 200. We quote from the language of Justice Scott, who delivered the opinion of the court:

"There are two distinct and firmly established rights of sureties, which are involved

in the consideration of this case: First, that of substitution, or subrogation, through which a surety paying off the debt of his principal is entitled to stand in the place of the creditor, and have all the rights which he has, for the purpose of reimbursement. A statement of this right was made in clear and forcible terms by the Chancellor (Lord Brougham), in Hodgson v. Shaw, 3 My. & K. 183, where it was said: 'It is hardly possible to put this right of substitution too high, and the right results more from equity than from contract or quasi contract; unless in so far as the known equity may be supposed to be imported into any transaction, and so raise a contract by implication."

"The doctrine of the court in this respect was luminously expounded in the argument of Sir Samuel Romilly. in Craythorne v. Swinburne (14 Vesey, 160) ; and Lord Eldon in giving judgment in that case sanctioned the exposition by his full approval. 'A surety,' to use the language of Sir S. Romilly's reply, 'will be entitled to every remedy which the creditor has, against the principal debtor. to enforce every security and all means of payment; to stand in the place of the creditor, not only through the medium of contract, but even by means of securities entered into without the knowledge of the surety; having a right to have those securities transferred to him. though there was no stipulation for that; and to avail himself of all those securities against the debtor.'* * *

"In regard to this question of superiority of equities, which is liable to arise in the case of prior and subsequent bonds, executed by different sureties, for distinct purposes, and both constituting securities in the hands of the creditor for the same debt, it is well settled that if the interposition of the second surety is for the benefit of the principal alone, without the sanction or assent of the first surety, who may be prejudiced thereby; as when the effect of the second bond is to prevent the enforcement of present payment from the principal, and thus to prolong the responsibility of the first surety; in such a case the equity of the first surety is superior, and he is entitled to be subrogated to the rights of the creditor as against the second. Parsons & Cole v. Briddook, 2 Vern. 608; Pott v. Nathans, 1 Watts & S. [Pa.] 155 [37 Am. Dec. 456] ; Burns v. Huntington Bk., 1 Pen. & W. [Pa.] 395; Brandenburg v. Flynn's Adm'r, 12 B. Mon. [Ky.] 397; Dunlap v. Foster, 7 Ala. R. 734 (N. S.).

"And this doctrine seems to be entirely equitable, for it is but reasonable that the benefit intended for the principal alone, by the second surety, should be conferred, if at all, at his own risk, and not at the risk or to the prejudice of other parties whose wishes were not consulted in the transaction.

"But the rule is otherwise, where the surety in the second bond becomes bound for a purpose in which both the principal and the prior surety concur, in which they both have an interest, and where the assent of the prior surety is expressly given, or is clearly to be inferred from the circumstances of the case. In such a case the last surety has a right to look for his indemnity, not only to his principal, but to such fixed securities as had been given to the creditor, when his engagement was entered into, and on the faith of which he may be presumed to have incurred his obligation. Howe v. Frazier, 2 Robinson [La.] 424, and authorities cited supra.

"It is settled law that if a creditor, by valid contract with his principal debtor, without the consent of the surety, extend the time of payment, by thus tying up his own hands, and suspending his right of action, on the original contract, against the principal, he discharges the surety. But if the contract for extending the time be made with the assent of the surety, his liability remains unaffected. Upon a principle quite analogous to this, do the conflicting equities of prior and subsequent sureties, in cases like the present, depend. If, without the consent of the first surety, the creditor is arrested in the collection of his debt from the principal, by the interposition of a second surety, the former will be allowed, for his indemnity, to be subrogated to the rights of the creditor against the latter. But this equitable right can have no place, where the first surety assents to the second contract of suretyship; and especially where it is entered into at his instance, or for his benefit. His unqualified assent and concurrence leaves his prior liability in full force, as between the two sureties, and entitles the latter to the full right of substitution as against him."

In the case from which we have just quoted, the surety on the first bond united with the judgment debtor in executing the undertaking on appeal, in order to stay execution, and, because the appeal was taken with his assent and by his active procurement, it was held that he was not released from liability on the first bond.

In a Kentucky case, Brandenburg v. Flynn's Adm'r, 12 B. Mon. (Ky.) 397, the rule is stated as follows:

"We know of no case in which, on the ground either of contribution among cosureties or of substitution to the securities of the creditor, a subsequent surety coming in aid of the debtor alone, without the request or concurrence of the original sureties, and in the regular course of the remedy for coercing the debt from him alone, or for the purpose of obstructing its collection by his own separate proceeding and for his own benefit, has obtained in equity either partial

or full reimbursement from the prior sureties. On the contrary, the doctrine established by the adjudged cases, and as we think in conformity with the true principles of equity, is that, if under such circumstances the prior surety is compelled to pay the debts, he thereby becomes entitled by substitution to the rights of the creditor against the subsequent surety to the whole extent of the payment made and of the obligation of the subsequent surety; which precludes all right on the part of the subsequent surety, should the debt be coerced from him, to claim reimbursement from the prior surety."

The following authorities support plaintiff in error's contention that, in cases where the appeal is not taken with the consent of the prior surety, the first surety, upon payment of the obligation of his bond, is entitled to be subrogated to the rights of the creditor as against the sureties on the supersedeas bond. Brandenburg v. Flynn's Adm'r, 12 B. Mon. (Ky.) 397; Harnsberger et al. v. Yancey et al., 33 Grat. (Va.) 527; Friberg et al. v. Donovan, 23 Ill. App. 58; Kellar v. Williams, 10 Bush (73 Ky.) 216; Chrisman v. Jones et al., 34 Ark. 73; Moore, Adm'r, v. Lassiter et al., 16 Lea. (84 Tenn.) 630; Hinckley v. Kreitz et al., 58 N. Y. 583; Culliford v. Walser et al., 158 N. Y. 65, 52 N. E. 648, 70 Am. St. Rep. 437.

On the other hand, where the appeal is taken at the instance of, or by the procurement of, the surety on the first bond, the contrary rule is announced and followed. Hartwell v. Smith, supra; Dillon v. Scofield, 11 Neb. 419, 9 N. W. 554.

In a few cases it has been held that the sureties on a supersedeas bond are entitled to be subrogated to the rights of the creditor as against the sureties on a dissolving bond in attachment, on the theory that such bonds are a substitute for and stand in lieu of the property attached and released by the execution of the bond. Day v. McPhee, 41 Colo. 467, 93 Pac. 671; Rosenbaum v. Goodman et al., 78 Va. 121.

We do not think such cases have any application to the instant case, for the reason that a redelivery bond in replevin in this state is not, in the strict sense, a substitute for the property released in pursuance thereof, nor has the surety on the redelivery bond the option to return the property or its value, as contended by counsel for Mr. Lucas.

Section 4804, Rev. Laws of Oklahoma 1910, requires that the condition of the undertaking shall be that:

"The defendant will deliver the property to the plaintiff, if such delivery be adjudged, and will pay all costs or damages that may be awarded against him."

Under section 4807, Rev. Laws of Oklahoma 1910, the judgment for the plaintiff in an action to recover the possession of personal property may be for possession or the recovery of possession or the value thereof, in case delivery cannot be had.

It is very clear to us that in the instant action it was the duty of the obligors in the redelivery bond to return the property if possible, and, in the event this could not be done, the plaintiff was entitled to a judgment for the value thereof in an action on the bond. The judgment in the replevin action was for the return of the property, the execution of which judgment was stayed by the giving of the undertaking on appeal. The liability of the sureties on the supersedeas bond then became the same, as regards the return of the property, as that of the surety on the redelivery bond.

There is not any evidence in the record before us disclosing that the surety company procured or consented to the appeal and stay of execution of the judgment rendered against the defendants in the replevin action, although, when the surety company executed the redelivery bond, as surety for said defendants, it was charged with the knowledge that under the law they were entitled to appeal. Still an appeal could have been taken by them without their giving a supersedeas bond; but; if so taken, execution would not have been stayed and the plaintiff would have been entitled to the possession of the property pending the appeal. And in that event, upon affirmance of the judgment, the plaintiff could have resorted to such property in her possession and subjected it to the payment of her claim. Under such circumstances, the surety on the redelivery bond would have been at least partially relieved from the burdens of its obligations. But Mr. Baker and Mr. Lucas, by becoming sureties for the defendants on their supersedeas bond, enabled them to obtain a stay of execution of the judgment until the case was finally disposed of in the Supreme Court, and thereby prevented the collection of the plaintiff's judgment until that time, which was some months after the appeal was taken. This delay was secured by Mr. Baker and Mr. Lucas agreeing to pay the judgment in the event the same was affirmed, and except for their intervention the judgment may have been enforced against the defendants in the replevin action. This delay may have injuriously affected the

position of the surety company on the redelivery bond, and undoubtedly did in this case. It would seem, as between the parties thus situated, that justice would demand that the primary liability should be imposed upon those who caused the delay.

The court was therefore in error in rendering judgment in favor of Mr. Lucas and Mr. Baker as against the surety company, and this part of the judgment is reversed. The case, however, will be affirmed as to the judgment rendered against all the defendants in favor of the plaintiff.

All the Justices concur.