[Civ. No. 92. Fourth Appellate District.—February 7, 1930.]

G. W. McCLINTICK, Respondent, v. MARIANNA R. LEONARDS, as Executrix, etc., Appellant.

V. L. Ferguson for Appellant.

Siemon & Garber for Respondent.

MARKS, J.—Respondent commenced this action against R. T. Leonards to recover $1300 alleged to be due under the terms of a written contract. Judgment was rendered in favor of respondent and after the appeal had been taken, Leonards died and appellant was substituted herein.

The action grew out of an oil lease on real property situated in Kern County, California, the record title to which stood in the name of Alex Kirkpatrick, trustee. Respondent and H. A. McClintick, his mother, were purchasing the property under an executory contract of sale.

On January 30, 1926, Leonards himself prepared and presented to respondent three documents, consisting of an oil lease in triplicate, a letter to himself and an agreement between himself and respondent. On the same day the three copies of the oil lease were signed by G. W. McClintick and Catherine McClintick, his wife, and H. A. McClintick, by G. W. McClintick, her attorney-in-fact, as lessors, and R. T.

Leonards as lessee. One copy was kept by Leonards and another sent to Alex Kirkpatrick, who received the same.

The letter and agreement are important to the case and are set forth in full in words and figures as follows:

"Delano, California, January 30th, 1926.

"Mr. R. T. Leonards,

"728 South Spring Street,

"Los Angeles, California.

"Dear Sir:

"I am handing you herewith Oil and Gas lease in triplicate conveying to you or your order the right to explore certain lands for oil or gas.

"These lease is more fully described as to detail as being situate in Section twenty-seven Township twenty-seven S. R. 24 E. M. D. B. & M. Kern County.

"The present title to these lands is vested in Alex Kirkpatrick or Alex Kirkpatrick, Trustee, of Los Angeles, California.

"The described lands as set forth in said lease dated January 30th, 1926, is being purchased by the undersigned, G. W. McClintick and H. A. McClintick, a widow of Denver, Colorado, each of the above named parties having a joint one-half undivided interest in said purchase contract with Alex Kirkpatrick or Alex Kirkpatrick, Trustee.

"Mr. Alex Kirkpatrick individually or as trustee is authorized to consent to the signing of an agreement, should he see fit to do so, wherein all legal requirements may be complied with in order to fully validate the terms of the within mentioned lease as to each separate detail.

"You are authorized to pay Mr. Kirkpatrick on account of the purchase contract upon said lands the sum of One Thousand Dollars upon receipt of such written consent and payment of One Hundred Dollars on the first day of March, 1926, and each thirty days thereafter until the total sum of Thirteen Hundred Dollars shall have been paid to said Alex Kirkpatrick.

"It is understood that I am to furnish you with necessary quit claims covering lands described in lease referred to. It is further understood that monies to be paid in accordance with this letter and the terms of the lease are to cover rentals on the said leased lands for a period of one year from January 30th, 1926.

"I further agree to furnish you with a true and correct copy of power of attorney from H. A. McClintick, wherein I am vested with due power and authority to execute the documents or leases herein mentioned.

"Signed. G. W. McCLINTICK,

"CATHERINE McCLINTICK.

"Witness ——————.

"Delano, California, January 30th, 1926.

"Received of R. T. Leonards the sum of Two Hundred Dollars ($200.00). Said Money is acknowledged as consideration towards the payment of one years land rental covering a certain Oil and Gas lease as of this date executed by H. A. McClintick by G. W. McClintick, her attorney in fact, Catherine E. McClintick, and G. W. McClintick. Accompanied with said lease is a certain letter authorizing Alex Kirkpatrick to consent to said lease account of a certain purchase contract covering said lands by lessees. It is understood that R. T. Leonards shall pay to said Alex Kirkpatrick the sum of money stipulated in said letter and agreements referred to within ten days after the delivery by me of quit claims and power of attorney referred to in said agreements. In the event of failure on the part of R. T. Leonards to Comply with the terms of payment then in that event the said Two Hundred Dollars shall be retained by me and forfeited as liquidated damages.

"Signed. G. W. McCLINTICK.

"Accepted

"R. T. LEONARDS."

The parties agree that respondent furnished the quitclaim deeds, power of attorney, and other documents mentioned in the letter, excepting the written consent of Alex Kirkpatrick to the execution of the lease. ■ Whether or not this consent was given is in dispute and presents the sole question to be decided on this appeal. The trial court found that it had been given, and found for the respondent and rendered judgment in his favor for $1300. The evidence shows that during the latter part of February, 1926, Kirkpatrick saw Leonards and gave his verbal consent to the execution and delivery of the oil lease in question, and at that time Leonards promised to pay the $1300 to him. On March 8, 1926, Kirkpatrick wrote Leonards as follows:

"Los Angeles, Cal., Mar. 8th, 1926.

"Mr. R. T. Leonards,

"728 So. Spring St.,

"Los Angeles, Calif.

"Dear Sir:

"I herewith advise you that I now hold lease in my possession from Mr. G. W. McClintick on the following described property:

"The S–W¼ of the S–W¼, and the S–E¼ of the S–W¼; and the S½ of the S½ of the N–W¼ of the S–W¼; and the S½ of the S½ of the N–E¼ of the S–W¼; Section 27, Township 27 S., Range 24 E., Mt. Diablo Base and Meridian—comprising 100 acres.

"I have been instructed to turn this lease over to you upon the payment of $1,000 and the further three months rental of $100 per month.

"However, I understand that there are certain matters pertaining to former lease granted on this property which you are desirous of having cleared, before making initial payment, and for your protection I hereby guarantee that I will deliver the aforesaid lease at any time within 30 days, allowing sufficient time for you to work this matter out.

"Yours very truly."

This letter was signed by Kirkpatrick, mailed to Leonards and received at his office in Los Angeles. The copy introduced in evidence was furnished to respondent by one of Leonards' clerks.

It must be borne in mind that the agreement and the letter signed by respondent were prepared by Leonards and that the letter was addressed to Leonards. In so far as the paragraph of the letter of importance here is concerned, it constituted an order on Leonards to pay the $1,000 of the $1300 to Kirkpatrick when he, Kirkpatrick, had given a written consent to the execution of the lease. It does not provide who shall obtain this consent; certainly the burden is not placed upon respondent. The agreement contains the direct statement that Leonards will pay Kirkpatrick this money within ten days after the delivery of the quitclaim deeds and power of attorney by respondent, which Leonards received shortly after February 8, 1926. A reading of the two instruments leaves the impression that the parties in-

tended to place the duty of securing the consent from Kirkpatrick upon Leonards. There is nothing in the record to throw any light upon the intention of the parties other than the language of the instruments themselves.

While the letter from Kirkpatrick to Leonards under date of March 8, 1926, does not make the definite and explicit statement that he consented to the execution of the lease, still it clearly shows that it was his intention to do so. This is especially true in view of Kirkpatrick's verbal statement to Leonards that he consented to the lease, and Leonards' oral promise to pay the money according to the terms of the written agreement. Clearly, the letter was intended as a written consent, and if Leonards objected to its form he should have promptly communicated his objections to the other parties or be subject to the conclusion that he had waived them (sec. 1501, Civ. Code). The parties evidently regarded the letter as a consent, for we find that on March 11, 1926, three days after it was mailed in Los Angeles to Leonards in Los Angeles, they were still proceeding with the transaction. In the due course of business the letter should have been received in Leonards' office not later than March 9, 1926, if not on the day it was mailed.

If an offer of performance of an obligation be defective, the offeree must object on that ground or the defect is waived and he cannot be heard to urge such objection in a subsequent suit (*Lockhart* v. *J. H. McDougall Co.*, 190 Cal. 308 [212 Pac. 1]). Had the letter contained the direct statement over Kirkpatrick's signature, "I consent to the execution of the lease between McClintick and yourself," Leonards would have been in no better position to enforce his rights had he proceeded with the transaction than he would have been with the letter in the form submitted to him, for Kirkpatrick would have been in no position to maintain that the letter was not a consent to the execution of the lease.

As we have mentioned before, the written instruments did not place any express duty on respondent to secure the written consent of Kirkpatrick to the execution of the lease, nor was a like duty expressly placed upon Leonards, who must be charged with any ambiguity in the documents which he prepared. "Any uncertainties existing in an agreement are to be interpreted most strongly against the one who prepared the instrument and caused the uncertainties to be

present. Section 1654 of the Civil Code declares: 'In the case of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party.' Such presumption is furthered where it appears that the promisor drew the contract. Thus, any uncertainty or ambiguity in an insurance contract is to be construed most strongly against the insurer. He frames it; and is supposed to make it as potent as possible in his own favor. Where the language of one party may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the other party. This is the rule stated in section 1649 of the Civil Code, and in section 1864 of the Code of Civil Procedure.'' (Sec. 185, 6 Cal. Jur. 307.) In view of the fact that Leonards left respondent on January 30, 1926, with the duly executed oil lease in his possession, together with the letter addressed to him signed by McClintick, which contained written authority to Kirkpatrick to consent in writing to the execution of the lease and an order on Leonards to pay the $1300 to Kirkpatrick and that no express act was required of respondent to complete the transaction except the furnishing of the quitclaim deeds and power of attorney, which he did, we conclude that Leonards assumed the duty of securing the consent from Kirkpatrick. He cannot escape payment of the money on the ground that the form of the consent given was not to his liking, it appearing that he failed to object to it and failed to ask for another in a more definite form.

Judgment affirmed.

Sloane, P. J., and Barnard, J., concurred.