[Civ. No. 797. Fourth Appellate District.—August 15, 1933.]

E. W. KING et àl., Respondents, v. HARTFORD ACCI-
DENT AND INDEMNITY COMPANY (a Corpora-
tion), Appellant.

712

Conron & Conron, Jesse H. Steinhart and John J. Goldberg for Appellant.

Alfred Siemon and T. R. Claflin for Respondents.

JENNINGS, J.—This action was instituted by the sureties on an appeal bond to recover from the surety on an undertaking given to secure redelivery of property seized by virtue of a writ of attachment. Upon the conclusion of the trial the court rendered judgment in favor of plaintiffs for the full value of the property attached. From the judgment thus rendered the defendant has prosecuted this appeal.

The action which gave rise to the present action was entitled *McClintick* v. *Leonards,* 103 Cal. App. 768 [285 Pac. 351]. In it the plaintiff sought to recover from the defendant the sum of $1300, together with interest and costs. Upon the filing of the complaint therein a writ of attachment issued directing the sheriff to attach any property of the defendant in the county wherein the action was commenced as security for the satisfaction of any judgment that might subsequently be rendered in plaintiff's favor. Pursuant to such writ of attachment the sheriff seized and

took into his possession the sum of $761 which was the property of Leonards, defendant in said action. Thereupon an undertaking was executed by the Hartford Accident and Indemnity Company, defendant in the present action, whereby the said surety agreed to redeliver the money attached to the sheriff "to be applied to the judgment, or in default thereof, that defendant (Leonards) will, on demand, pay the plaintiff (McClintick) the full value of the property released". Upon the filing of this undertaking the money which had been seized was ordered released.

Upon the trial of the action in *McClintick* v. *Leonards, supra,* judgment was rendered in plaintiff's favor for the sum of $1423.53. Thereafter, Leonards, the defendant in said action, appealed from the judgment thus rendered against him and for the purpose of securing a stay of execution pending the appeal executed an undertaking upon which the plaintiffs herein, E. W. King and Edward Weit, were sureties. This undertaking, which was executed pursuant to the provisions of section 942 of the Code of Civil Procedure of the state of California, provided that the said sureties are "jointly and severally bound in double the amount named in said judgment, and that if said judgment or order appealed from or any part thereof is affirmed, or the appeal dismissed, the appellant will pay the amount directed to be paid by said judgment and all damages and costs awarded against the appellant upon said appeal not to exceed the amount of the bond". Subsequently the judgment rendered in said prior action in favor of the plaintiff McClintick was affirmed (*McClintick* v. *Leonards, supra*). Thereafter McClintick applied to the trial court for judgment against the sureties on the *supersedeas* bond and after proceedings regularly taken the court entered judgment against said sureties, plaintiffs herein, for the sum of $1737.64. Thereupon a writ of execution issued on the judgment thus rendered and the sureties, E. W. King and Edward Weit, paid to McClintick the sum of $1719.64, in full satisfaction of the judgment which had been rendered against them.

During the pendency of the appeal in the case of *McClintick* v. *Leonards, supra,* the judgment debtor died and the executrix of his will was substituted as defendant in said action. A claim against the estate of Leonards for the amount of the judgment was filed, but, as alleged in the com-

plaint in the present action, the claim was unpaid and "said estate is insolvent and . . . the assets thereof were exhausted and wholly paid out and expended in the satisfaction and discharge of the costs and expenses of administration and claims having a priority over the claim of said McClintick".

Following the affirmation of the judgment in *McClintick* v. *Leonards, supra,* a demand was made upon the defendant in the present action that it pay over and deliver to the plaintiffs herein the property attached in the former action. Upon the failure and refusal of said defendant to comply with the demand thus made the present action was instituted, resulting as aforesaid in the rendition of a judgment in favor of plaintiffs, sureties on the *supersedeas* bond, against the defendant, surety on the release of attachment bond, for the full value of the property seized under the writ of attachment. It should here be observed that the court found that all of the allegations contained in paragraph 5 of plaintiff's amended complaint are true. One of the allegations therein contained which is of importance in the present appeal is the following: "These plaintiffs, *at the instance and request of said Leonards* (italics ours) and for the purpose of securing a stay of execution pending said appeal, made, executed and delivered to the clerk of said court their certain written undertaking on appeal." From the aforesaid finding we are warranted in concluding that the trial court found that the stay bond was executed solely at the request of Leonards and that the defendant herein, surety on the release of attachment undertaking, neither concurred in the request of the judgment debtor nor consented thereto. We understand that there is no dispute between counsel upon this point and it may be remarked that the record herein fails to disclose that the defendant had any knowledge of the execution of the stay bond.

The single problem which is here presented is, therefore, whether the sureties on a *supersedeas* bond who have been compelled to pay the judgment upon its affirmation are entitled to recover from the surety on a release of attachment bond when the stay bond was executed solely at the request of the judgment debtor and without the knowledge or consent of the surety on the prior bond.

It is immediately apparent that if recovery may be had in such a situation as is here presented, it must be by virtue

of the equitable doctrine of subrogation. In *Estate of Whitney*, 124 Cal. App. 109, 118 [11 Pac. (2d) 1107, 1110], the following language from *Southern Surety Co.* v. *Tessum*, 178 Minn. 495 [228 N. W. 326, 329, 66 A. L. R. 1136], is quoted with approval:

"Subrogation is equity's method of compelling the ultimate payment by the one who in justice and good conscience ought to make it—of putting the charge where it justly belongs. (*Emmert* v. *Thompson*, 49 Minn. 386 [52 N. W. 31, 32 Am. St. Rep. 566].) It is not an absolute right, but depends upon the superiority of the equities of him who asserts it over those of the one against whom it is sought. 'It will never be enforced when the equities are equal or the rights not clear.' "

The general rule with respect to the application of the equitable doctrine of subrogation as between successive sureties is stated in the note appearing in 77 American Law Reports, at page 458, in the following language: "The general rule seems to be that a surety on a *supersedeas* bond will not, upon paying the judgment rendered against his principal, be subrogated to the creditor's remedies against the sureties on a prior bond of the same debtor, in the absence of special circumstances rendering his equities equal or superior to theirs,—such as a case in which the surety on the *supersedeas* bond becomes in fact a surety for the sureties on the prior bond of the same principal." In Stearns on Suretyship, second edition, section 254, the rule is stated as follows:

"The execution of a suretyship obligation in the course of a legal proceeding for the collection of a debt for which another is already bound as a surety, or where bonds are given in the prosecution of legal remedies in the appellate courts in which successive undertakings are required, generally results in placing the ultimate liability upon the last surety, through whose agency the litigation has been prolonged, and while as between such surety and the creditor he may be properly termed a surety for the prior promisor, yet if his contract is solely in the interest of the principal, and without the assent of the prior surety, he is regarded as debtor of all the prior parties, and not entitled to subrogation to the remedies of the creditor against the

prior sureties; but on the contrary if the prior surety pays he will recover by subrogation from the later surety. . . .

"This rule is usually put upon the ground that the successive surety by prolonging the litigation makes himself an obstacle to the prior promisor by preventing an adjustment of the controversy, wherein the prior surety might have had immediate subrogation to the rights of the creditor against the principal, and this conclusion seems to be reached without requiring any showing that the prior surety has in fact been injured."

The rule is often declared in brief form in the following language: Successive sureties on judicial bonds are liable to each other in the inverse order in which they became sureties (*Southwestern Surety Ins. Co.* v. *King et al.*, 68 Okl. 100 [172 Pac. 74, L. R. A. 1918D, 1188]; *Chrisman* v. *Jones*, 34 Ark. 73).

The application of the above-stated rule to the situation here presented would indicate that the trial court erred in permitting the sureties on the *supersedeas* bond to recover from the surety on the release of attachment bond and that the judgment should be reversed. Respondents contend, however, that, because of certain statutes of California, the court's action in permitting recovery was correct and that the judgment should be affirmed.

The statutes upon which particular reliance is placed by respondents in support of the judgment are section 1059 of the Code of Civil Procedure and section 2849 of the Civil Code. The former of these sections is in the following language:

"Surety on appeal substituted to rights of judgment creditor. Whenever any surety on an undertaking on appeal executed to stay proceedings upon a money judgment, pays the judgment, either with or without action, after its affirmation by the appellate court, he is substituted to the rights of the judgment creditor, and is entitled to control, enforce, and satisfy such judgment, in all respects as if he had recovered the same."

As was pointed out in *Holmes* v. *Hughes*, 125 Cal. App. 290, 295 [14 Pac. (2d) 149], this section literally covers all cases wherein an undertaking on appeal is filed irrespective of any question of privity between the parties and regardless of whether the judgment debtor knew that

such an undertaking had been filed. But the right of a surety to be subrogated to the rights of the judgment creditor against the judgment debtor is not at all dependent upon the statute. It is a right long recognized and enforced in equity. Section 1059 of the Code of Civil Procedure simply gives to the surety a summary remedy of utilizing the judgment itself to enforce rights against the judgment debtor which he possesses not by virtue of the statute, but by virtue of recognized fundamental equitable principles. The statute therefore may properly be characterized, as was done in the above-cited decision, as providing simply a mode of procedure based upon the doctrine of subrogation and governed by the same equitable principles.

█ Section 2849 of the Civil Code is in the following language: "Surety entitled to benefit of securities held by creditor. A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a cosurety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not." This section is found under article III of chapter II of the code. The title of chapter II is "Suretyship" and the heading of article III is "Rights of Sureties." In this article are described various rights and remedies specifically conferred by statute upon sureties. Section 2849 and the section immediately preceding deal particularly with the right of a surety who satisfies his principal's obligation to be subrogated to whatever remedy the creditor has against the principal (sec. 2848) and to be subrogated to the benefit of any security for the performance of the principal obligation which the creditor or a cosurety held at the time the suretyship contract was executed or which is acquired by the creditor subsequent to the execution of the suretyship contract (sec. 2849). However, these sections of the code do not add anything to the recognized principles of subrogation. They are "but a reenactment of the well-settled rules of equity on the subject of subrogation or substitution" (Mr. Justice Shaw in *Martin* v. *De Ornelas,* 139 Cal. 41, 49 [72 Pac. 440, 444]). It was pointed out in *Estate of Elizalde,* 182 Cal. 427, 432 [188 Pac. 560], that section 2848 of the Civil Code does not exclusively measure the rights of sureties to subrogation and that thereby the legislature did not

intend to announce all the law on the subject. It seems equally evident that the legislature did not intend by the enactment of both sections under consideration to encompass completely the entire subject of subrogation. Irrespective of the question of whether the release of attachment bond may properly be regarded as a security held by the creditor for the performance of the principal obligation, we are convinced that the great weight of authority in the United States has established the rule that the surety on a *supersedeas* bond is not entitled, upon paying the judgment recovered against his principal, to be subrogated to the creditor's remedies against sureties on a prior bond of the same debtor in the absence of special circumstances which operate to render the equities of the later surety superior to those of the earlier.

In the instant case it is apparent that there are no special circumstances which relieve it from the operation of the above-stated rule. As heretofore noted, the court found that the *supersedeas* bond was executed "at the instance and request" of the judgment debtor and there is no showing that the surety on the release of attachment bond, appellant herein, concurred in the action taken by the judgment debtor or consented thereto. The result produced by the execution of the *supersedeas* bond was to prevent the enforcement of present payment of the judgment debtor and thus to prolong the responsibility of the prior surety. The delay which was thus brought about through the interposition of the second sureties may have injuriously affected the position of the surety on the prior bond. In this connection, it is to be borne in mind that, pending the appeal, the judgment debtor died and that the court, by finding that the allegations of paragraph 6 of the amended complaint are true, found that the estate of the judgment debtor is insolvent. This circumstance points strongly to the fact that appellant's position was injuriously affected by the delay produced through the interposition of respondents in becoming sureties on the *supersedeas* bond. It is therefore apparent that the equities of respondents are not only not superior to those of appellant, but that in fact the equities in appellant's favor preponderate over those of respondents.

It may be remarked in conclusion that the judgment may not be sustained on the theory that the parties

to the present action were cosureties and that respondents are entitled to recover from appellant under the equitable doctrine of contribution. The record shows that the action was tried on the theory that respondents were entitled to subrogation and the judgment which was rendered was based on the principle of subrogation. No attempt was made to segregate the amount which was paid by respondents into the constituent elements of damages, interest and costs incurred in the trial of the action in *McClintick* v. *Leonards, supra,* and costs on the appeal in said action. On the contrary, the judgment from which this appeal is taken was for the full value of the attached property. Furthermore, respondents and appellant were not cosureties. They were bound for the same principal but for different obligations. Appellant's obligation under the redelivery bond was to redeliver the attached property or to pay its value to the proper officer on demand. No judgment had been rendered when appellant's undertaking was executed and there was no promise to pay a judgment if one should be rendered. Respondents, on the other hand, bound themselves to pay the amount of the judgment which had then been rendered and all damages and costs awarded upon appeal if the judgment should be affirmed. The obligations of the parties to this action were distinct obligations having no connection by privity or otherwise (*Fidelity & Deposit Co. of Maryland* v. *Bowen,* 123 Iowa, 356 [98 N. W. 897, 6 L. R. A. (N. S.) 1021]; *Chrisman* v. *Jones,* 34 Ark. 73).

It follows, therefore, that, in our opinion, the trial court's conclusion that respondents ''are entitled to judgment'' against appellant was incorrect and that the judgment rendered in favor of respondents may not be sustained.

The judgment is therefore reversed and the trial court is directed to enter judgment in appellant's favor.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 8, 1933, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 13, 1933.