[L. A. No. 7193. In Bank.—January 6, 1923.]

CORA S. LOCKHART, Executrix, etc., et al., Respondents, v. J. H. McDOUGALL COMPANY (a Corporation), Appellant.

[1] MORTGAGE — TRANSACTION CONCERNING PURCHASE OF LAND — ADVANCEMENT OF PRICE—TAKING OF TITLE AND AGREEMENT TO SELL.—Where a partnership agreement was entered into for the purchase of land, and subsequently in order to pay the sum due upon the purchase price it was arranged to segregate the partnership interest, and the portion allotted to one of the partners was conveyed to a corporation, which advanced the sum necessary to procure the deed and took title in its own name and executed a contract for the sale of the land to the partner upon payment of the amount of the advancement, the transaction was in effect a mortgage to secure the corporation.

[2] ID.—TENDER OF ADVANCEMENT—SUFFICIENCY OF—STOPPING OF INTEREST.—The objection that the tender of the amount of such

---

1. Admissibility of parol evidence to show that a written instrument which on its face imparts a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage or pledge, note, **L. R. A.** 1916B, 18.

advancement was made upon the unauthorized condition that the corporation convey more land than the purchaser was entitled to, and that therefore it was not a sufficient tender to stop the running of interest, was waived, where the corporation not only did not object on that ground, but also refused to consider that the purchaser owed any debt or had any interest in the land.

[3] ID.—PAYMENT OF ADDITIONAL AMOUNTS — BONUSES — INTEREST.— Where the purchaser agreed at the time of the advancement to pay the corporation an additional amount and later agreed to increase such amount in consideration of an extension of time to make payment of the advancement, such additional amount was not to be treated as interest, but as a bonus, and the corporation was entitled to interest thereon from the date it became due.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Reversed.

The facts are stated in the opinion of the court.

Anderson & Anderson, Daugherty & Theile, Silas W. Mack, Stuart M. Salisbury and Wm. B. Himrod for Appellant.

Chas. H. Brock and J. N. Hastings for Respondents.

WILBUR, J.—This is an action to redeem certain real property from the lien of a mortgage. Plaintiffs obtained a judgment fixing the amount due and providing that upon payment thereof defendant should execute a deed to them. The principal controversy between the parties was over the question of whether or not the transaction between them was shown by parol to be a mortgage or was a contract of sale of the real estate in question entered into between the defendant corporation as vendor and the plaintiffs as vendees, as it purported to be. The action was originally brought by Otis H. Lockhart and Cora S. Lockhart, as husband and wife. The husband has since died and his wife has been substituted as executrix. Inasmuch as the husband and wife were the vendees in the contract and the plaintiffs in the action, we will refer to them hereafter as "the plaintiffs," notwithstanding the substitution. The J. H. McDougall Company appealed from the judgment.

[1] We will first outline a few of the outstanding facts. Cora S. Lockhart entered into a partnership agreement with M. E. Post for the purchase of 2,793 acres from the Loma

Vista Ranch Company. Subsequently in order to pay the sum of $40,000 due upon the purchase price of the land from the Loma Vista Ranch Company it was arranged to segregate the partnership interest. The portion allotted to Cora S. Lockhart was conveyed to the J. H. McDougall Company; that company advanced the sum necessary to procure the deed from the Loma Vista Ranch Company and from Post, and took title to the property and executed a contract for the sale of the land to the plaintiffs. This arrangement was found by the trial court to be in effect a mortgage to secure to the J. H. McDougall Company the repayment of the sums agreed upon as the ostensible purchase price of the premises agreed in the contract of purchase to be paid by the plaintiffs as vendees.

Appellant contends that the evidence is insufficient to justify this conclusion of the trial court. It is clear that the defendant took title to the land in question and executed the contract of sale for the purpose of accommodating the plaintiffs. By this arrangement the defendant ostensibly acquired the legal title and the plaintiffs the equitable title, defendant's interest in the property as vendor being a right to receive the purchase price and to retain the legal title of the property until it was paid. Aside from the provisions in the contract making time the essence of the contract, the relative rights of the parties to the contract of sale were quite similar to those of a mortgagor and mortgagee. Otis Lockhart testified that J. H. McDougall, representing the defendant, said that he would let plaintiffs have what they needed and they could pay it off as they liked, even as low as $100 at a time, and that if it was a mortgage it would not be so elastic. The property was worth a great deal more than the purported purchase price and the difference between the purchase price and the value of the property represented the investment or interest of the plaintiffs in the property which was by their direction conveyed to and vested in the defendant. Without an analysis of the correspondence and dealings of the parties tending to support the finding of the trial court that the arrangement between the parties was a mortgage, it is sufficient to say that the evidence supports the finding of the court and that the question of whether or not the fact that the transaction constituted a mortgage was established by clear and satis-

factory proof, was a question for the trial court. (*Sheehan* v. *Sullivan,* 126 Cal. 189 [58 Pac. 543]; *Wadleigh* v. *Phelps,* 149 Cal. 627 [87 Pac. 93]; *De Kahn* v. *Chase,* 177 Cal. 281 [170 Pac. 608].)

Two additional questions are raised by the record with reference to the proper allowance of interest to be made to the defendant. It is claimed by plaintiffs and found by the court that a tender of the full amount due was made to defendant and that because of such tender and refusal thereof, the defendant company is not entitled to interest from that date. (Civ. Code, sec. 1504.) The appellant claims that the tender made was insufficient to stop the running of interest.

On April 10, 1919, one J. N. Hastings tendered defendant a certified check for $73,000. The finding of the trial court upon the matter of tender is as follows:

"That on or about the 10th day of April, 1919, these plaintiffs made an offer to the officers and directors of the defendant at the office of the defendant in the city of Salinas, California, to pay then and there the full amount of indebtedness due on that day to said defendant from plaintiffs, including all accrued interest and bonuses, and demanded that defendant execute a deed to plaintiffs of that part of said property then standing of record in the name of defendant, being the west half of the southwest quarter, and the east half of the southwest quarter and the west half of the southeast quarter of said section 10.

"That the plaintiffs were then and there ready, willing and able to pay said obligation in full, and made known this fact to said officers and directors, but said officers and directors then and there refused absolutely to entertain the plaintiffs' offer of payment, stating that the matter was closed and the defendant did not care to have any further negotiations. That said officers and directors then and there further declared and claimed that the defendant was the owner of said property and that plaintiffs had no ownership, right, title or interest in or to the said property or any part thereof, and refused to execute to plaintiffs a deed for all or any part of said property.

"That the money due from the plaintiffs to the defendant was not actually offered to the defendant because of the said statements of said officers and directors of defendant.

"That plaintiffs are now, and at all times since said offer of payment was made, have been ready, willing and able to pay the balance due on their said indebtedness to defendant, but defendant has at all times since said 23rd day of May, 1917, refused and does now refuse to accept said payment and to execute to plaintiffs a deed."

It will be observed that the plaintiffs in making the tender demanded a deed to 240 acres of land. During the trial it was stipulated and the court found that the plaintiffs were not entitled to 80 acres of this land. This 80 acres had been hypothecated by the defendant company by a deed of trust executed to the Citizens Trust & Savings Bank and had been subsequently purchased at the trustee's sale by the defendant corporation. The money secured by the corporation on the trust deed was applied to the indebtedness due from the plaintiffs to the defendant. The defendant's first claim with reference to this tender is that it was made upon condition that the defendant convey 80 acres more than the plaintiffs were entitled to and that, therefore, it was not a tender sufficient to stop the payment of interest.

[2] Did it also constitute a sufficient tender to prevent the running of interest?

The plaintiffs had a right to demand a deed to the land held by the defendant as a mortgage (160 acres); the tender of the full amount due was made, and it was not suggested by defendant that there was any distinction between the 80 acres acquired by it by virtue of the sale to it under a trust deed executed by it, and the balance of the land held by it. Apparently none of the parties had this distinction in mind. The defendant declined to negotiate with plaintiffs or consider the question of tender affirming title to the whole 240 acres. The offer of performance was upon a condition not authorized and hence if objected to upon that ground would have been unavailing to stop the running of interest, but where the defendant not only did not object on that ground but also refused to consider the proposition that the plaintiffs owed any debt, or that they had any interest in the land, the defect in the tender was waived by failure to object thereto on that ground. (Civ. Code, sec. 1501; *Kofoed* v. *Gordon*, 122 Cal. 314, 320, 321 [54 Pac. 1115].) A good tender having been made, or waived, the indebted-

ness ceased to bear interest. (Civ. Code, sec. 1504; *Stein* v. *Leeman,* 161 Cal. 502 [119 Pac. 663].)

[3] Appellant claims that the court erred in failing to allow interest at seven per cent per annum on the sum of $15,000 from the date it was due, to wit, February 1, 1914. The court disallowed any interest on this amount, apparently upon the theory that the item was itself interest and that the contract provided it should not bear interest and that, therefore, section 1917 of the Civil Code, which provides that interest shall be payable on all moneys at the rate of seven per cent per annum after they become due, unless there is an express contract in writing to the contrary, has no application.

It appears that when the original contract of purchase and sale was entered into between the parties, the vendees agreed to pay $8,000 in addition to the amount of money which the vendor, the defendant, had paid in connection with the acquisition of the title to the land. On May 7, 1909, the defendant company executed an agreement of extension for five years from and after February 1, 1909, containing the following statement:

"Provided, nevertheless, and this extension of time is made upon the express condition, that said parties of the second part in said agreement, shall at the time of the execution of the deed as in said contract stipulated to be made, pay and give to said J. H. McDougall Company, the sum of fifteen thousand dollars, without interest, in place and stead of eight thousand dollars, as in said agreement stipulated, such sum being stipulated as a consideration for this extension of time.

"This extension applies to the balance still unpaid under said contract or agreement, and to the lands still unconveyed pursuant to its terms, and time is of the essence hereof."

It is true that there are cases holding that a bonus paid for the making of a loan is in effect additional interest. If we adopt the respondent's view that the $8,000 payable without interest, agreed upon in the original contract of sale, and the additional $7,000 agreed upon in the extension of February 1, 1909, were items of interest in addition to the six per cent fixed in the contract, then the rate of interest agreed upon in the original contract was six per cent, plus two and ten-elevenths per cent, a total of eight and ten-

elevenths per cent, and the agreement for the next five years upon the same basis was eight and six-tenths per cent. (*Malone* v. *Roy,* 107 Cal. 520 [40 Pac. 1040].) In that case the court was evidently of the opinion that the difference between the amount loaned and the amount agreed to be repaid was to be considered as interest and that the total amount so agreed to be paid would bear interest after maturity at the rate of seven per cent in the absence of any agreement as to the rate of interest or payment thereof. In that case the parties contemplated that at the end of the year the rights of the vendee or mortgagor should cease and made no provision for continuing their relations. In the case at bar it is clear that if we regard the transaction as a mortgage, as we must under the findings of the court, and consider that the item of $15,000 was made up of two items of interest, $8,000 for the first five years and $7,000 for the second five years, that the rate of interest at the time the obligation of the mortgagor became due was eight and six-elevenths per cent and that the parties clearly contemplated that the amounts due were to bear interest. The result of this conclusion would be that the principal of $55,000 would bear interest at the rate of eight and six-elevenths per cent from the maturity of the contract to the date of the tender in 1919. Disregarding the question of partial payments, the additional interest, of two and six-elevenths per cent per annum, upon the entire principal of $55,000 for that period would be over $7,000, while the interest upon $15,000 at seven per cent for the five years would be $5,250.

Without ascertaining the date and the amount of the partial payments, something the parties have not undertaken to do, we cannot say which view is more favorable to the appellant. We see no reason, however, why the sum of $15,000 should not be taken, as the parties agreed it should be considered, as the amount to be paid for the five years extension, and when so considered it must bear interest from the date it was due, notwithstanding the agreement of the parties that it should not bear interest before it became due. (Civ. Code, sec. 1917; *Roberts* v. *Smith,* 64 Tex. 94 [53 Am. Rep. 744]; *Jones* v. *Gardner,* 57 Cal. 641.) The defendant is entitled to the allowance of interest at seven per cent on $15,000 from the first day of February, 1914, to the tenth day of April, 1919.

The appellant next contends that the court committed error in the allowance of $12,000 to the plaintiffs by reason of rents collected for the use of the land in question. The point arises out of the fact that the 80 acres conceded to belong to the defendant were included in the lease of 240 acres made to the American Beet Sugar Company at $25 per acre. The particular point involved is the contention of the appellant that the 80 acres to which it had title was of greater rental value than the other 160 acres, by reason of the fact that certain wells from which water was pumped for the irrigation of the entire 240 acres was located upon the defendant's 80 acres and that the use of this water increased the rental value of the property $15 per acre. In the absence of anything to the contrary, the court would have been justified in applying the rental value of $25 per acre *pro rata,* and we think there is nothing in the evidence with regard to the use of water which would justify departure from this rule and that the trial court was not in error in its application of the amount of $12,000 to the mortgage indebtedness.

The defendant claims that the judgment is erroneous for the reason that the trial court directed that a deed be made to Cora S. Lockhart and the heirs of Otis H. Lockhart jointly upon payment of the amount due. The contract of sale was executed by both husband and wife. The plaintiffs do not complain that the judgment gives the heirs of Otis H. Lockhart a half interest in the property, and the defendant is not interested in that question.

It is suggested rather than argued that plaintiffs cannot maintain this action, because the partnership agreement between M. E. Post and Cora S. Lockhart was entered into by the wife instead of the husband to defeat or delay the husband's creditors. We do not see that the defendant is in a position to raise the question as to the invalidity of this original transaction between M. E. Post and Cora S. Lockhart, for both husband and wife are named as vendees in the agreement with the defendant, and such agreement is not tainted with the fraud.

The judgment is reversed and the lower court is directed to módify the judgment by including therein interest upon the sum of $15,000 from February 1, 1914, to April 10, 1919, at the rate of seven per cent per annum, the total amount of

the judgment so ascertained to bear interest from the date of the original judgment, May 26, 1921. Appellant to recover its costs on appeal.

Waste, J., Sloane, J., Lennon, J., Shaw, C. J., Lawlor, J., and Ward, J., concurred.