[Civ. No. 7384. Third Dist. Jan. 13, 1948.]

BAKER DIVIDE MINING COMPANY (a Corporation), Respondent, v. JAMES MAXFIELD, Appellant.

Zeutzius & Steffes, A. P. G. Steffes and Thomas F. Sargent for Appellant.

Wm. F. Rose, Carl E. Day and Floyd H. Bowers for Respondent.

ADAMS, P. J.—Plaintiff, the respondent, brought this action in ejectment against the defendant, appellant, to recover possession of 1,929.81 acres, more or less, of mining land in Placer County, and for damages for the alleged wrong-

ful withholding of possession after demand by the corporation. From a judgment for plaintiff awarding it possession of the property and rental value damages for wrongful withholding defendant has appealed.

At all times herein mentioned respondent was and is a California corporation with 21,278 issued and outstanding shares of capital stock. All of the shares were originally owned by two brothers, Beach Carter Soule and H. D. B. Soule, each owning 10,639 shares. Beach Carter Soule died, and W. A. Richardson and Ruth Petit, the latter being decedent's widow who had remarried, were appointed and qualified as executor and executrix of decedent's will. On June 23, 1936, said H. D. B. Soule and said executor and executrix in their representative capacities, entered into an option agreement with appellant in which option the former were designated as ''Stockholders,'' which gave appellant the right and option to purchase said 21,278 shares of stock for $25,000, payable $500 on the execution of the option, the balance to be paid as follows: Seven monthly installments of $100 each, on or before the first day of December, 1936, January, February, March, April, May and June, 1937; monthly installments of $150 each for the second six months of 1937; of $200 each for the first six months of 1938 and $250 each for the second six months; of $300 each for the first six months of 1939 and $350 for each of the second six months; $400 each for the first six months of 1940 and $450 for each of the second six months; and the balance of $11,200 on or before July 1, 1941.

The respondent corporation was not a party to that option agreement. It was stipulated that at all times mentioned the corporation respondent was the legal owner of the property.

The option agreement gave appellant the right to enter into possession of the property of the corporation for the purpose of mining, and the right to the use and occupation of the residence and other buildings on the property and the right to retain possession of the same ''only so long as he is not in default in any payments required of him hereunder or in the performance of any of the terms and conditions of this agreement.''

It further provided that appellant should pay ''to the stockholders to be credited upon the purchase price'' of the shares of stock, 10 per cent of the net mint or smelter returns

of all gold and other precious metals recovered, and that appellant should pay, and he agreed to pay, "all taxes, assessments, and other State and governmental charges levied or assessed against the Corporation or upon the property of the Corporation and the improvements thereon" and to "keep said buildings on said premises insured in the sum of at least $5,000., loss, of any, payable to the Corporation."

Paragraph 10 of the option agreement then provided:

"Time is of the essence of the agreements herein contained and of the payments herein provided to be made and in the event of the default, as hereinafter provided, of the Purchaser to exercise the option hereby granted, the rights of the Purchaser or his assigns herein shall cease and terminate; provided, however, that if Stockholders shall at any time claim that the Purchaser has failed to do or perform anything which, by the terms of this option, he has agreed to do and perform, including the payment of any installments herein provided for, the Purchaser shall have a reasonable opportunity thereafter to perform, and Stockholders shall send to Purchaser, at No. 131 South Third Street, Las Vegas, Nevada, by registered mail, a notice, in writing, specifying the claimed default upon the part of Purchaser, and demanding that such default be cured within a period of thirty (30) days; upon the failure of the Purchaser to perform all the obligations on his part to be performed, which are specified in said notice, the Stockholders shall be entitled to the immediate possession of said property and shall also be entitled to retain all moneys theretofore paid by the Purchaser or his assigns hereunder, as rental for the use and occupation of said property, and upon such default and termination of this option, the Corporation and the Stockholders shall be entitled to the immediate possession of the corporation's properties."

Contemporaneously with the execution of said option agreement, Maxfield executed a lease and option to Neal L. Dow and R. Allen Hall by which he granted to them the exclusive right to enter upon and mine a designated portion of the land so long as appellant was not in default under his option agreement and they complied with the terms of the lease and option given to them. Dow and Hall, in their lease and option, agreed to pay appellant "and/or the Baker Divide Mining Company" a royalty of 10 per cent of all the net mint or smelter returns on the sale of gold or other

precious metals mined or produced by them from the property leased to them. Dow and Hall were given an option to purchase the land leased to them for $15,000 cash, which sum or any part thereof, if and when paid, should be paid directly to the corporation and credited on the last payments required to be made by appellant under his option agreement. Upon receiving said $15,000, the corporation was to deed to Dow and Hall the land so leased to them by appellant. The lease and option to Dow and Hall also provided:

"The right and possession herein granted to Dow and Hall for the purchase of said mining property shall immediately cease and terminate in the event that Maxfield shall fail to faithfully perform any of the terms of his option and agreement with the stockholders of the Baker Divide Mining Company, and without any notice whatever to Dow and/or Hall, or their assigns, of such failure and default."

Paragraph 13 of the lease and option to Dow and Hall provided:

"In the event that Maxfield defaults in his 'Option to Purchase Stock in Baker Divide Mining Company, a corporation' above referred to, Dow and Hall shall have a period of thirty (30) days after notice to them of Maxfield's default, within which to cure the default of Maxfield in each and every respect in which he is in default, and shall, after thus curing such default, be subrogated to all of the rights of Maxfield in and to the said 'Option to Purchase Stock in Baker Divide Mining Company, a corporation,' with the same force and effect as if said Option had originally been entered into with Dow and Hall as the Optionees, in the place and stead of Maxfield."

Paragraph 9, which contains the option to Dow and Hall to purchase the land leased to them, for $15,000 and payment thereof direct to the corporation and the conveyance to them by the corporation, paragraph 11, which reserved to Maxfield and the corporation the right to mine areas outside the land leased to Dow and Hall, paragraph 12, which related to use of fuel wood and cutting timber for mining purposes, paragraph 13, which provided that if Maxfield defaulted under his option agreement Dow and Hall should have 30 days after notice to them of Maxfield's default within which to cure the default and after curing Maxfield's default to be subrogated to Maxfield's rights under the latter's option agreement, and paragraph 14, which provided

that in the event Dow and Hall should elect to exercise their option to purchase, any royalty payments made by them should be credited on the purchase price of $15,000, were approved in a writing attached to the lease and option to Dow and Hall, and signed Baker Divide Mining Company, by W. A. Richardson, president, and Edgar Zook, secretary; also by the same stockholders named in the option agreement to appellant.

On February 21, 1938, Hall quitclaimed to Dow all his right, title and interest in and to the lease and option given to him and Dow. However, the option to purchase given to Dow and Hall was never exercised.

In April, 1939, H. D. B. Soule sold his 10,639 shares of stock to P. D. Burtt and P. J. Feykert for $6,000, and, with the written consent of Maxfield, in May, 1939, J. D. Crummey, a relative of Dow, purchased the 10,639 shares owned by the estate of Beach Carter Soule, deceased, for the sum of $6,000.

Appellant defaulted under his option agreement. He paid the $500 down and the $100 a month due December 1, 1936, and on the first days of January, February, March, April, May, June, July and August, 1937. He also made a payment of $70 on July 1, 1938, but he failed to pay the taxes as called for in his option agreement. Therefore, on his option for purchase of the stock for $25,000, he paid only $1,470; and his last payment of only $70 was made July 1, 1938, nearly seven and one-half years before the beginning of the trial of this action on January 15, 1946.

It is admitted by appellant that on December 18, 1942, the transferees of the stock signed and sent to him, by registered mail, and that he received, a notice of his default under his option agreement, which notice set forth all credits and debits and showed a balance due from appellant as of December 15, 1942, of $27,379.63, and gave him to January 22, 1943, within which to pay same. Appellant did not cure his default. On February 6, 1943, respondent corporation served him with a notice to vacate the property. This action was filed on March 13, 1943.

Appellant, on this appeal, assumes that he had the right to defend against this ejectment suit brought by the respondent corporation, because of his option agreement with the stockholders to purchase their stock, though respondent corporation was not a party to that agreement,

nor could it have been, for only the owners of shares of stock, and not the corporation, may contract with relation to the shares. Likewise, as was said in *Bank of Visalia* v. *Smith,* 146 Cal. 398, 403 [81 P. 542], approved in *Sanchez* v. *East Contra Costa Irrigation Co.,* 205 Cal. 515, 518 [271 P. 1060] : ''The stockholders of a corporation have no estate in the land or other property of the corporation, and the transfer by a stockholder of the stock owned by him, does not transfer any of the property of the corporation, or affect any right or obligation of the corporation in reference to the property held by it.''

To same effect see 1 Fletcher Cyclopedia Corporations (perm. ed., p. 111, § 31.) ▓ The shareholders are not in any proper sense the owners of the corporate property and the whole title is in the corporation. (6A Cal.Jur. p. 749.) The corporation and the shareholders are distinct parties in contracts made by one or the other. (6A Cal.Jur. p. 750.) Also see *Miller* v. *McColgan,* 17 Cal.2d 432, 436 [110 P.2d 419, 134 A.L.R. 1424] ; *Holly Sugar Corp.* v. *Johnson,* 18 Cal. 2d 218, 223 [115 P.2d 8].

▓ Aside from the fact that respondent was not bound by the option agreement of its shareholders, appellant failed to allege or prove an equitable title in himself to the land. The rule in such cases is clearly set down in *Verbeck* v. *Clymer,* 202 Cal. 557, 561 [261 P. 1017], as follows:

''Where the legal title is admitted to be in plaintiffs, defendants can only prevail against them by setting up an equitable defense, 'and the equity presented must be of such a character that it may be ripened by a decree into a legal right to the premises or such as will estop the plaintiff from the prosecution of the action' (9 Cal.Jur. p. 1000). . . . Where a vendee in possession under a contract of purchase has failed to perform his part of the contract and is in default with respect thereto without excuse he cannot maintain an equitable defense in an action of ejectment by the vendor (*Connolly* v. *Hingley,* 82 Cal. 642 [23 P. 273] ; *Howard* v. *Hewitt,* 139 Cal. 614 [73 P. 414]). 'A purchaser cannot remain in possession of lands under a contract and at the same time refuse to pay the purchase price. . . .' (*Rhorer* v. *Bila,* 83 Cal. 54 [23 P. 274] ; *Gates* v. *McLean,* 70 Cal. 49 [11 P. 489] ; *Gervaise* v. *Brookins,* 156 Cal. 106 [103 P. 329]). The essence of the rule is that where the legal title to the property is in the plaintiff and that fact is admitted by the defendants,

defendants cannot successfully defend against an action in ejectment unless they make out a complete equitable title in themselves with the right of possession thereunder (*Wallace v. Maples*, 79 Cal. 433 [21 P. 860] ; *Flint* v. *Conner*, 53 Cal. App. 279 [200 P. 37] )."

The fact that appellant held only an "option," rather than a contract, affects his standing. He never exercised the option, therefore it never became binding on the optionors, to say nothing of the corporation even if it had been a party to it. In *Ware* v. *Quigley*, 176 Cal. 694, 698 [169 P. 377], the court said: "An option is not a transfer of property. No title is conveyed thereby. It is a mere right of election acquired by one under a contract to accept or reject a present offer within the time therein fixed."

In *Ludy* v. *Zumwalt*, 85 Cal.App. 119, 130-131 [259 P. 52] (hearing in Supreme Court denied), this court said:

"Manifestly, it cannot logically be held that, by virtue of his mere right to purchase the property which is the subject of the option, the optionee acquires any actual interest in the property itself which is the subject thereof, or that he can acquire any such interest until he has seasonably accepted or exercised his option to purchase according to the terms of the agreement. . . . An excellent definition of an option is given in 29 Am. & Eng. Ency. of Law, second edition, page 606, as follows: 'The distinction between a contract to purchase or sell real estate and an option to purchase is, that the contract to purchase or sell creates a mutual obligation on the party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase.' "

Having failed to exercise his option, appellant could not even maintain an action to compel transfer of the corporate stock. (*Caldwell* v. *Dalaray Mines, Inc.*, 68 Cal.App. 2d 180, 184 [156 P.2d 52].) Not being able to obtain specific performance of the option, it is not a defense in an action in ejectment brought by the owner. (*Hedden* v. *Waldeck*, 89 Cal.App. 494, 496 [265 P. 344].) In *Barcroft* v. *Livacich*, 35 Cal.App.2d 710 [96 P.2d 951], in which a hearing in the Supreme Court was denied, it was said at page 718:

"Where a vendee in possession under a contract of purchase has failed to perform his part of the contract and is in default in respect thereto without excuse, he cannot main-

tain an equitable defense to an action in ejectment by the vendor who is the holder of the legal title.''

Also, at page 721:

''One who appeals to a court of equity to defend him against title to land of which he is in possession must do equity by paying the price which he agreed to pay. The maxim 'he who seeks equity must do equity' applies to him in full force. Appellants, under the circumstances of this case, were not entitled to hold possession and withhold the purchase price.''

■ The first contention stated by appellant in his brief is that the court erred in striking his first amended cross-complaint, the purpose of which was to bring in as parties the transferees of the stock, Burtt, Feykert, Crummey and Dow, the latter alleged to be a partner with Crummey in the purchase (which purchase was consented to in writing by appellant), and to bring in as parties the representatives of the estate of Beach Carter Soule, deceased, and the corporation itself, and to compel the transfer to appellant of all the shares of the corporation, his theory being that after the execution to appellant of the option agreement, the parties agreed to certain modifications of the price for the shares. The trial court struck the cross-complaint on the grounds that the new parties sought to be brought in were strangers to the issue of right of possession by the corporation of the real property in question. Appellant admits that on March 24, 1945, which was nine days after the filing of the order striking his first amended cross-complaint, he filed an action in the Superior Court of Placer County against the same persons who were named cross-defendants in his first amended cross-complaint that was stricken, that his complaint in the latter action contains substantially the same allegations as were contained in the stricken first amended cross-complaint, and that the latter action is still pending.

Under the rules of law above stated, it would seem that the matter proposed to be set up in the first amended cross-complaint could not constitute a defense against respondent's action in ejectment, and therefore was properly stricken. Furthermore, appellant's second amended answer set up as a separate defense the matter contained in the stricken first amended cross-complaint, and in addition alleged estoppel against respondent, the statute of limitations, waiver of right to possession, and failure of respondent to serve on appellant

any notice or compliance with the rules and regulations of the Office of Price Administration relative to the eviction of a tenant from the dwelling house located on the premises. Evidence was admitted in support of the allegations of that second amended answer, which evidence covered the same ground contemplated by his stricken first amended cross-complaint.

The trial court found that the respondent was the owner and entitled to the possession of the premises involved; that on or about March 9, 1943, without right or title, appellant entered into possession of the premises and ousted and ejected respondent therefrom and ever since has withheld and still unlawfully withholds the possession thereof from respondent; that appellant had not made out or proven a complete or any equitable title in himself, or any right to the possession of the property, or any part thereof; that neither respondent nor Burtt, Feykert, Crummey or Dow, or any of them, were guilty of any fraudulent, or collusive, or unconscionable acts or conduct in the premises, and that neither of them at any time disregarded any rights of appellant nor did they agree among themselves, or at all, to deprive appellant of any right or title or interest in and to the property and assets of respondent or the outstanding shares of its capital stock, or any of such shares; that respondent was not estopped, and that its causes of action were not barred by any statute of limitations, and that respondent had not waived any right to the possession of the property; that the premises were not used as a dwelling, that appellant was not a tenant and that the property was not, at the time the action was commenced, located in a defense rental area, wherefore the rules and regulations of the Office of Price Administration were not applicable.

Furthermore, the stricken first amended cross-complaint of appellant did not even attempt to state any cause of action against respondent corporation with relation to the title or right to the possession of the property, but sought to enforce alleged contracts with shareholders with reference to shares of stock, to which contracts respondent was not a party. While it is true that respondent purported to ratify portions of the lease and option from appellant to Dow and Hall which was never consummated, appellant predicated his rights upon the original option agreement between him and

the shareholders and not upon the lease and option to Dow and Hall.

█ The second contention of appellant is that the court erred in permitting respondent to file an amended complaint, which amendment contained a supplemental separate and second cause of action containing language corresponding to that contained in appellant's second amended answer with relation to appellant's claim under his option agreement with the shareholders. Since all parties tried the case on the assumption that the option agreement was in issue, it is not understandable how appellant can now complain of the amendment. Both the amendment to respondent's complaint and the second amended answer of appellant put that option agreement in issue.

█ The third contention of appellant is that the court erred in overruling his objection to the introduction in evidence of the notice of default which was signed by the transferees of the stock who were not the stockholders who signed the original option agreement. The objection was based upon the claim that the notice was fatally defective because it was not signed by the original optionors, and further because it notified appellant to pay past due payments to the transferees of the stock.

As hereinbefore stated, appellant gave his written consent to the transfer of half the shares to Crummey and thereby, surely at least Crummey was authorized to sign the notice. Furthermore, appellant was not injured but favored by the notice. It gave him more than 30 days to cure his default under his option agreement and he did nothing about it; he took no action nor did he make any offer to anyone to perform, despite the fact that he was then woefully in default. Whether signed by the original shareholders or their transferees, the notice conformed to the requirements of the option agreement and appellant should have taken some action within the more than 30 days allowed him. Furthermore, since respondent corporation was not a party to the option agreement, no notice from it was due appellant as a condition precedent to filing the ejectment action.

In connection with that contention, appellant argues that "the most fatal omission in giving the 30-day notice was the failure to tender the stock when the demand was made for the entire balance of the purchase price." Since appellant did nothing after the receipt of the notice, it seems

obvious that a tender of the stock would have been useless. There is nothing in paragraph 10 creating a reciprocal obligation; it merely provides that the optionors shall give appellant 30 days to cure "his" default, and there is no provision calling upon optionors to tender the shares of stock as a condition precedent to payment.

In *McClintick* v. *Leonards,* 103 Cal.App. 768, 773 [285 P. 351], the court said: "If an offer of performance of an obligation be defective, the offeree must object on that ground or the defect is waived and he cannot be heard to urge such objection in a subsequent suit (*Lockhart* v. *J. H. McDougall Co.,* 190 Cal. 308 [212 P. 1])."

Furthermore, respondent, not being a party to the option agreement, owed no duty to make any tender of anything to appellant.

Appellant cites and relies chiefly upon *Boone* v. *Templeman,* 158 Cal. 290 [110 P. 947, 139 Am.St.Rep. 126]. But that case is easily distinguishable from the instant case. In the Boone case there was a contract for purchase and sale. Boone was in default as to all payments due under the contract. The court found that he was ready, willing and able to perform, offered to perform, and had demanded a deed. To make that case analogous here, appellant would have to show that he was ready, willing and able to perform, and offered to perform. Doubtless when the notice was served on him, had he offered to perform and been ready, willing and able to perform, this action would not have been instituted.

The fourth contention is that the court erred in denying appellant's motion for a nonsuit, because the notice given did not conform to paragraph 10 of the option agreement. Appellant admits in his brief that such argument applies "here as under the preceding point," hence further or repeated discussion of the notice is not necessary. However, it seems that any notice to appellant would have been futile for the reason that long after he defaulted in his payments and long before this action was filed, to wit, on April 2, 1942, appellant wrote a letter, apparently to Richardson, stating in part:

"Again taxes are about due on the Divide and I am still in an uncertain position financially. . . .

"To cap all my troubles I have been indicted on my 1935 income tax. . . . I am certain I will lick the charge.

"If without injustice to anyone under all the circumstances

you can see your way clear to have the Divide company advance the April tax installment I will be even more deeply in your debt that I am now. . . ."

The record further shows that repeated demands prior to that date had been made on appellant to make payments due under his option agreement, and that repeatedly he had confessed financial difficulties as an excuse for his failure to make the payments.

The fifth contention is that the court erred in finding and holding that respondent was and is entitled to the possession of the real property in question. It is argued that it was absolutely necessary for the court to determine "what, if any, effect followed the service of the notice of default or the notice of forfeiture," and that it was likewise "necessary to pass upon the question as to the necessity of tendering the consideration before a declaration of forfeiture." The trial court rendered an opinion in which it said:

"It is unnecessary in this action to determine what if any effect followed the service of the notice of default or the notice of forfeiture. Neither is it necessary to pass upon the question as to the necessity of tendering the consideration before a declaration of forfeiture. Since plaintiff was not a party to the option agreement, the right of defendant to possession is not measured by the legal effect of that agreement or by the contractual relations of the parties thereto but by the equitable relations between plaintiff and defendant. Defendant's equitable defense may not prevail unless it squares with the maxims of equity. In determining against this defense this court decides that in this action those relations do not establish a right to possession as against the owner of the property; obviously the rights of others not parties to this action are not involved and so not subject to determination here. All that is decided in this action is that as against the corporation's claim to the right of possession the asserted equitable defense must fall."

Since respondent was not a party to nor bound by the option agreement, it was not necessary to make findings on matters contained in it. The court having found on all material issues, the judgment will not be reversed for failure to find as to immaterial matters. (*Garvey* v. *Lashells,* 151 Cal. 526, 534 [91 P. 498].)

The sixth and final contention is that the evidence is insufficient to sustain the findings with reference to each and

every issue of fact which it found adversely to appellant, and that the court erred in making too general findings of fact. Nowhere in appellant's brief is it pointed out in what respect it is deficient to sustain plaintiff's cause of action. An appellate court is not required to search the record for evidence tending to sustain a claim to which its attention has not been specifically invited. (*Baumann* v. *Harrison,* 46 Cal.App.2d 73, 82 [115 P.2d 523].) However, the matter is unimportant in view of the fact that respondent cannot be held to the option agreement not made by it but by its shareholders. The facts with relation to the option agreement are not disputed and on the face of that instrument it appears that respondent was not a party to it. Therefore, the findings are sufficient under the circumstances. The trial judge properly concluded that this was an action in ejectment by respondent, the legal owner of the premises, against appellant in wrongful possession who did not allege or prove an equitable title against respondent, the only defense open to appellant. His contracts with others were not pertinent to the issue of right to possession of the property as between respondent and appellant. Appellant may have a cause of action against the original stock owners and their transferees, but that is not a defense in this action in ejectment.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied February 9, 1948, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1948.