[Civ. No. 8225. Third Dist. Nov. 4, 1953.]

JAMES MAXFIELD, Appellant, v. P. D. BURTT et al., Respondents.

Zeutzius & Steffes for Appellant.

Carl E. Day and Victor A. Chargin for Respondents.

SCHOTTKY, J.—Plaintiff brought this action to specifically enforce an option agreement to purchase all of the outstanding shares of stock of the defendant Baker Divide Mining Company for the sum of $25,000, and for damages resulting to him because of the failure of the defendant owners of said stock to convey same to him as provided in said agreement and the alleged oral modification thereof.

Defendants in their answer denied that plaintiff had performed the terms of the option agreement, and alleged that plaintiff's rights had been terminated by notices duly given in accordance with said option agreement. Defendants also pleaded the defenses of res adjudicata and the statute of limitations.

The case was tried before the court without a jury, and the court found in substance that on August 2, 1938, and December 18, 1942, proper and sufficient written notices of default under said option agreement were given to appellant; that appellant failed to cure his defaults within a period of 30 days after said notices, or at all, and that any rights which appellant may have had under said option agreement of June 23, 1936, were thereby terminated; that in the prior action in ejectment all the issues raised by appellant in this action were raised as defenses and that all of said issues were determined adversely to appellant, and, therefore, all the issues raised by appellant herein have been conclusively determined and adjudicated against him and are res judicata, and this action is thereby barred and appellant is estopped and precluded from relitigating said issues in this action; that prior to this action, defendants Burtt, Feykert and Crummey had disposed of all of the shares of the Mining Company; that appellant's alleged cause of action is barred by Code of Civil Procedure sections 337(1), 338(4), 339(1) and 343. Plaintiff has appealed from the judgment in favor of defendants entered in accordance with said findings..

In arguing for a reversal of the judgment plaintiff makes a number of contentions, but before discussing these we shall summarize the factual situation as shown by the record, bearing in mind the familiar rule that conflicting evidence must be construed in the light most favorable to the respondents, and that every favorable inference and presumption which may reasonably be deduced from the evidence should be resolved in support of the judgment.

One of the defendants herein is the Baker Divide Mining Company, a California corporation, with a capital stock of 21,278 shares. One-half of the capital stock (10,639 shares) stood in the name of W. A. Richardson, a defendant herein. These shares were held by Richardson in trust as executor of the will of Beach Carter Soule. The other half of the capital stock (10,639 shares) was owned by defendant H. D. B. Soule.

· On June 23, 1936, defendant Richardson, executor, and defendant Ruth Petit, executrix, of the will of Beach Carter

Soule, and defendant H. D. B. Soule, hereinafter referred to as "sellers," executed an option, hereinafter called "option agreement," in writing, giving plaintiff James Maxfield the right to purchase all of the outstanding shares (21,278) of capital stock of the Baker Divide Mining Company, for the sum of $25,000. The option agreement provided for payment of $500 upon the execution of the option agreement; certain designated monthly installments payable on or before the first day of each month beginning with the first day of December, 1936, and ending on the first day of December, 1940; and the balance of $11,200 to be paid on or before the first day of July, 1941.

The Baker Divide Mining Company, hereinafter referred to as "the Mining Company," was not a party to the option agreement. The primary asset of the Mining Company was approximately 1,900 acres of mining lands.

It was provided in the option agreement that time was of the essence of the agreement and of the payments to be made, and in the event of default of the purchaser or his assigns to exercise the option granted, the rights of the purchaser or his assigns would cease and terminate, provided that if the stockholders should at any time claim that the purchaser had failed to do or perform anything which by the terms of the option he had a right to do or perform, including the payment of any installments provided for, the purchaser should have a reasonable time, namely, 30 days thereafter, to perform, and the stockholders should send to the purchaser at 131 South Third Street, Las Vegas, Nevada, by registered mail, a notice in writing specifying the claimed default on the part of the purchaser, and demanding that such default be cured within 30 days; upon failure of the purchaser to perform all of the obligations on his part to be performed, which were specified in said notice, the stockholders should be entitled to the immediate possession of said property, and should also be entitled to retain all moneys theretofore paid by the purchaser or his assigns as rental for the use and occupation of said property; and upon such default and termination of this option, the corporation and the stockholders should be entitled to the immediate possession of the corporation property.

The option agreement further provided that no waiver by the sellers of any breach of the option agreement should be deemed to constitute a waiver of subsequent breaches. The plaintiff was given the right to assign any interest in

the option agreement to any corporation duly licensed in the State of California; but not otherwise assign any rights without the written consent of the Mining Company or the sellers.

One Neal L. Dow and one R. Allen Hall were in possession of a portion of the mining property. Contemporaneously with the option agreement, plaintiff entered into a "lease and option" agreement with Dow and Hall, hereinafter referred to as "lease-option agreement," with the approval of the sellers, permitting Dow and Hall to enter upon a certain portion of the mining property for the purpose of mining so long as plaintiff was not in default under the option agreement and so long as Dow and Hall were not in default under their lease-option agreement. Dow and Hall were to pay a royalty of 10 per cent of all the net mint or smelter returns on the sale of gold or other precious metals mined from the property by them. Plaintiff gave Dow and Hall an option to purchase the property occupied by them for the sum of $15,000 to be paid to the Mining Company and credited on the last payments required to be made by plaintiff to the sellers under the option agreement. The Mining Company was to deed the leased land to Dow and Hall upon payment of the $15,000. The lease-option provided that "The right and possession herein granted to Dow and Hall for the purchase of said mining property shall immediately cease and terminate in the event that Maxfield shall fail to faithfully perform any of the terms of his option and agreement with the stockholders of the Baker Divide Mining Company. . . ." The lease-option agreement further provided that "In the event that Maxfield defaults in his 'Option to Purchase Stock in Baker Divide Mining Company, a corporation', above referred to, Dow and Hall shall have a period of thirty (30) days after notice to them of Maxfield's default, within which to cure the default of Maxfield in each and every respect in which he is in default, and shall, after thus curing such default, be subrogated to all of the rights of Maxfield . . ." in the option agreement. Hall subsequently assigned his interest in the lease-option agreement to Dow.

Pursuant to the option agreement plaintiff paid the $500 down and paid $100 on the first day of December, 1936, and on the first day of each month thereafter through June, 1937. According to the option agreement, on July 1, 1937, the monthly payments were to increase to $150 per month. Plaintiff did not make a payment on July 1, 1937; but on July 7, 1937, plaintiff mailed a check for $100 to Richardson, request-

ing that the monthly payments be continued at $100 per month for another six months' period. Richardson agreed to this. Plaintiff paid $100 in August but failed to make his September 1st payment, or any payments thereafter except for a $70 payment on July 1, 1938. Taxes came due and were paid by the Mining Company. A series of letters followed between Richardson and plaintiff and his attorney A. P. G. Steffes, to the effect that something had to be done about the default. The correspondence terminated on August 2, 1938, the latter being the date when the sellers sent a notice of cancellation of the option agreement to purchase the stock in the Mining Company pursuant to paragraph 10 of the option agreement and demanding that said defaults be cured within 30 days and notifying plaintiff that should he fail to cure the defaults within the 30 days the sellers and the corporation would reenter and take possession of the mining property.

In the meantime one P. D. Burtt and P. J. Feykert, defendants herein, were operating a mine on property adjacent to the property of the Mining Company and they became interested in buying that portion of the property of the Mining Company immediately adjoining theirs. Burtt contacted Richardson and the latter advised him of the plaintiff's option and informed him of the fact that he, Richardson, only represented one-half of the stock and that the other half was owned by H. D. B. Soule. Burtt contacted H. D. B. Soule through the latter's attorney, Edgar T. Zook. H. D. B. Soule through Zook offered to sell his half of the stock for $6,000.

In the meantime Richardson informed plaintiff of Burtt's interest in purchasing a portion of the property and one Hugh Milton, on behalf of plaintiff, offered to sell the 300 acres adjoining the mine of Burtt and Feykert to the latter for $15,000.

On October 11, 1938, Richardson wrote the plaintiff that he was being importuned by Mr. Burtt and his associates for a sale of the property to them for $12,500. Richardson also wanted to know what plaintiff could do since his sympathies were with the plaintiff.

About this time, Dow became interested in purchasing the property under lease to him for $5,000, the money to be advanced by Mr. Crummey, an uncle of Dow.

On November 7, 1938, Richardson wrote plaintiff informing him of the possibility of an offer by Dow of $5,000 for

the land leased by Dow, and Richardson advised plaintiff to sell and "let it be credited on account of your contract to purchase the property." The letter further stated, "You will appreciate, I am sure, that you have defaulted in your contract and that the Company served notice upon you of this default and that you are holding possession through the sufferance of the company, and it seems to me that you must do either one of two things, either pay up under your contract or make arrangements with Mr. Dow to let him purchase and make payment to our Company. Then I will endeavor to have the stockholders reinstate you and extend your time for the payment of the balance of the purchase price." Plaintiff expressed a willingness to cooperate.

On December 22, 1938, Richardson informed plaintiff by letter that Burtt was willing to buy the Mining Company stock for $12,500 ". . . and that something would have to be done in the matter at once. As you know, you are in default in your option to purchase this stock and notice has been given to you of such default, and you still remain in possession of the property through the sufferance of the stockholders and Baker Divide Mining Co." On December 30th plaintiff wired Richardson that Dow was ready to "close for $5,000" for the land leased by him and that he, plaintiff, would cooperate, and requested Richardson to delay the "Burtt matter."

On March 23, 1939, Richardson wrote plaintiff that Soule refused to sell any portion of the property unless the whole was taken care of.

Further communications were carried on between Milton representing plaintiff and one William A. Boekel representing Dow; however, nothing developed in the matter.

In April, 1939, H. D. B. Soule sold his 10,639 shares of stock in the Mining Company to P. D. Burtt for $6,000.

Then follows correspondence between May 2, 1939, and July 12, 1939, participated in by plaintiff, Boekel, Richardson and Crummey, upon which plaintiff bases his contention that the written option agreement for the purchase of the stock was modified by reducing the purchase price from $25,000 to $12,000. However, it is clear from a reading of said correspondence that it was part of a series of negotiations and that no conclusion was reached, and the finding of the trial court that no agreement to modify the terms of the option agreement was ever made is fully supported by the record.

The record shows further that on November 10, 1939, Boekel called plaintiff's attention to certain taxes on the mining property which were due and that under the option agreement plaintiff was bound to pay the taxes 'on the property. On November 17, 1939, plaintiff answered that he was unable to pay the taxes and asked Boekel to inquire if Crummey would consider paying the taxes and accepting plaintiff's note therefor. Crummey declined. On November 28th, plaintiff mailed the final tax installment of $100.12 to Boekel.

On January 12, 1940, Boekel wrote plaintiff, informing him that insurance premiums on the property were due; and inquiring what plaintiff intended to do to reinstate his contract with the Mining Company and expressing concern over the continuing default.

On January 23, 1940, in answer to inquiry by plaintiff, Dow wrote plaintiff that there was to his knowledge no thought of any notice of default being sent from the Mining Company to plaintiff and that he was certain that Crummey had no such thought in mind.

On February 13, 1940, Boekel informed plaintiff of a proposed meeting of all of the parties involved to iron out the difficulties. This meeting was suggested by Rose, secretary of the Mining Company.

Plaintiff could not arrange to be at the meeting and requested it be put over until March. Plaintiff was unable to make the March meeting or a suggested meeting on April 10, 1940.

There were communications with Boekel concerning the payment of taxes, and assurances by plaintiff that he would take care of the matter.

On July 12, 1940, plaintiff suggested a meeting after August 1st.

There was further plaintiff-Boekel correspondence between May 14, 1941, and April 2, 1942, inclusive, but nothing resulted therefrom.

On December 18, 1942, a "Notice of Cancellation of Option to Purchase Stock in Baker Divide Mining Company" signed by Feykert, Burtt, Crummey and Richardson was mailed to plaintiff, specifying defaults in the option agreement of June 23, 1936, and demanding that said defaults be cured on or before January 22, 1943.

On January 22, 1943, plaintiff filed an action in Orange County against the defendants in this suit for specific performance of the option agreement.

On March 13, 1943, the Mining Company filed an action in Placer County against the plaintiff, seeking to eject the plaintiff from the mining property of the corporation. The Mining Company alleged ownership, the right to possession, and the wrongful entry and withholding of possession by plaintiff. Plaintiff answered and cross-complained against the same defendants as in this action for specific performance of the option agreement. The Mining Company demurred to the answer and cross-complaint and it was stipulated that the demurrers be sustained and plaintiff filed a first amended answer and first amended cross-complaint. The Mining Company demurred to the first amended answer and first amended cross-complaint. On March 15, 1945, the demurrers were sustained and the court granted the motion to strike plaintiff's first amended cross-complaint without leave to amend.

On March 24, 1945, plaintiff filed this action in Placer County containing substantially the same allegations as his first amended cross-complaint.

On January 15, 1946, the ejectment suit of the Mining Company went to trial and judgment was entered for the Mining Company on June 29, 1946. This judgment was affirmed by this court in January, 1948 (83 Cal.App.2d 241 [188 P.2d 538]).

Appellant outlines his grounds for reversal of the judgment as follows:

''The trial court erred in finding and holding adversely to appellant on all and each of the following contentions raised by appellant:

''1. Maxfield was entitled, upon being served with a purported Notice of Cancellation under Paragraph 10 of the Option Agreement, to have a court determine the rights and obligations of all parties to the transaction, concerning which there was an obvious controversy.

''2. Punctual payment under the Option Agreement, according to its terms, was waived, and a proper notice under Paragraph 10 of the agreement was necessary, before Maxfield forfeited his rights thereunder.

''3. No proper notice of forfeiture, under Paragraph 10 of the Option Agreement, has ever been given to Maxfield.

''4. When the notice and demand for payment were mailed to Maxfield, they were ineffectual upon which to base a forfeiture, since the stock was not tendered or offered to be delivered to Maxfield, if he paid the full purchase price.

''5. This action is not barred by the statute of limitations.

"6. The material issues in this action are not *res adjudicata.*"

Respondents outline their answer to these contentions of appellant as follows:

"In reply we contend that there was no valid, or any, modification of the option agreement, and no valid, or any, agreement by Crummey to turn his stock over to Maxfield for $1000 and the 404 acres of land, and, further, that:

"1. The action is barred by the statute of limitations.

"2. All the issues in this action are *res judicata,* having already been adjudicated against plaintiff by both the trial court and this court.

"3. Plaintiff, having failed to exercise his option, cannot demand performance by defendants.

"4. Plaintiff's rights under the option agreement were terminated by the notices of August, 1938 and December, 1942.

"5. Plaintiff cannot prevail in this action for specific performance for the reasons that (a) there was no mutuality in the option agreement, (b) plaintiff has not performed, or offered to perform, on his own part, and (c) defendants have long since disposed of the stock and there is nothing upon which a decree of specific performance can operate."

Appellant's contention that punctual payments under the option agreement were waived by defendants is without merit. The option agreement provided that the agreed price of $25,000 was to be paid as follows: $500 on the execution of the option, the balance payable: seven monthly installments of $100 each, on or before the first day of December, 1936, January, February, March, April, May and June, 1937; monthly installments of $150 each for the second six months of 1937; of $200 each for the first six months of 1938; and $250 each for the second six months of 1938; of $300 each for the first six months of 1939; and $350 each for the second six months of 1939; $400 each for the first six months of 1940; and $450 each for the second six months of 1940; and the balance of $11,200 on or before July 1, 1941. As hereinbefore set forth, appellant made his installment payments pursuant to said terms through June, 1937. On July 7, 1937, he paid $100 instead of the $150 installment that was due, and requested that the monthly payments be kept at $100 for another six months' period. Defendant Richardson agreed to this. Appellant paid $100 in August, 1937, but made no further payment except a $70 payment

on July 1, 1938. Nor did he pay the taxes as agreed. Demands for payment were made upon him after June 1, 1937. The record amply supports the finding of the trial court that there was no waiver of punctual payments under the option agreement. Certainly no waiver is shown by defendants' demands for payment of delinquent installments, nor by failure to declare a forfeiture. ██ Section 11 of the option agreement provides that no waiver by the stockholders of any breach of the agreement or cause of forfeiture shall be deemed to be waiver of breaches or causes for forfeiture subsequently arising. It was therefore not necessary for defendants to notify appellant after default that strict performance would be required in the future. (*Fageol T. & C. Co.* v. *Pacific Indem. Co.,* 18 Cal.2d 748 [117 P.2d 669]; *Deevy* v. *Lewis,* 54 Cal.App.2d 24 [128 P.2d 577]; *Grimes* v. *Steele,* 56 Cal. App.2d 786 [133 P.2d 874].) ██ The fact that defendant may have made demands for overdue installments does not show a waiver of defaults. (*Buckey* v. *McGraw,* 206 Cal. 541 [275 P. 221]; *Pitt* v. *Mallalieu,* 85 Cal.App.2d 77, 85 [192 P.2d 24].)

It is apparent from the record that appellant was not in a financial position to make the agreed payments after June of 1937, and that he was endeavoring by various negotiations to keep his option alive but was not successful in such negotiations. Even after appellant was served with notice of default on August 2, 1938, he continued such negotiations but no agreement was arrived at, and on December 18, 1942, he was given definite notice by all of the stockholders of his default and the termination of his option unless he cured his defaults on or before January 22, 1943.

██ Appellant contends also that no proper notice of default was given to him in accordance with paragraph 10 of the option agreement. The record shows that on December 18, 1942, the notice of cancellation of option signed by defendants Feykert, Burtt, Crummey and Richardson was mailed to appellant. Appellant argues that this notice was not effectual because it was not signed by the persons who originally signed the agreement. This same contention was urged by appellant in *Baker Divide Mining Co.* v. *Maxfield, supra,* and in deciding same adversely to appellant's contention, this court there said at page 252:

"The third contention of appellant is that the court erred in overruling his objection to the introduction in evidence of the notice of default which was signed by the transferees

of the stock who were not the stockholders who signed the original option agreement. The objection was based upon the claim that the notice was fatally defective because it was not signed by the original optionors, and further because it notified appellant to pay past due payments to the transferees of the stock.

"As hereinbefore stated, appellant gave his written consent to the transfer of half the shares to Crummey and thereby, surely at least Crummey was authorized to sign the notice. Furthermore, appellant was not injured but favored by the notice. It gave him more than 30 days to cure his default under his option agreement and he did nothing about it; he took no action nor did he make any offer to anyone to perform, despite the fact that he was then woefully in default. Whether signed by the original shareholders or their transferees, the notice conformed to the requirements of the option agreement and appellant should have taken some action within the more than 30 days allowed him."

Appellant contends further that when the notice and demand for payment were mailed to appellant they were ineffectual to effect a forfeiture since the stock was not tendered or offered to be delivered to appellant if he paid the full purchase price. The following quotation from *Baker Divide Mining Co.* v. *Maxfield, supra,* at pages 252-253, is equally applicable to appellant's present contention:

". . . appellant argues that 'the most fatal omission in giving the 30-day notice was the failure to tender the stock when the demand was made for the entire balance of the purchase price.' Since appellant did nothing after the receipt of the notice, it seems obvious that a tender of the stock would have been useless. There is nothing in paragraph 10 creating a reciprocal obligation; it merely provides that the optionors shall give appellant 30 days to cure 'his' default, and there is no provision calling upon optionors to tender the shares of stock as a condition precedent to payment.

"In *McClintick* v. *Leonards,* 103 Cal.App. 768, 773 [285 P. 351], the court said: 'If an offer of performance of an obligation be defective, the offeree must object on that ground or the defect is waived and he cannot be heard to urge such objection in a subsequent suit (*Lockhart* v. *J. H. McDougall Co.,* 190 Cal. 308 [212 P. 1]).' "

Appellant contends also that the court erred in finding that all of the issues in the instant action were conclusively determined and adjudicated against him in the former action

of *Baker Divide Mining Co.* v. *Maxfield,* and are res adjudicata.

As hereinbefore stated, on March 13, 1943, the Baker Divide Mining Company commenced an action against appellant in which it sought to eject appellant from the mining property of the corporation. Appellant in that action sought by way of cross-complaint to bring in the present respondents so that his rights under the option agreement could be determined, but the court granted a motion to strike out said cross-complaint on the grounds that the present respondents were not essential parties in determining the issue of possession and that the only issue in the former action was the right to possession of the real property as between the corporation and appellant. Appellant argues that respondents cannot, therefore, properly contend that the issues presented here have been adjudicated previously.

In the action in ejectment, appellant's second amended answer alleged substantially all of the allegations of his second amended complaint in the present action; and respondent's amended complaint in the prior ejectment action contained a supplemental separate and second cause of action containing language corresponding to that contained in appellant's amended answer in the former action; and all parties tried the prior ejectment case on the assumption that the option agreement was an issue and evidence was admitted upon those issues.

Respondents in this action testified in the ejectment action upon the very issues raised in this action. The trial court held in the ejectment action that respondent's allegations were true and that the allegations of appellant's answer were untrue, and the judgment in the ejectment action was affirmed by this court. (*Baker Divide Mining Co.* v. *Maxfield,* 83 Cal.App.2d 241 [188 P.2d 538].)

Matters not in issue in the previous action are not res adjudicata. ▮ A judgment is not an adjudication of those matters which were not and could not properly be relied upon and determined in the previous action, but is conclusive where the requisite jurisdiction exists, of all those matters which it clearly adjudicates. The Supreme Court said, in *Bernhard* v. *Bank of America,* 19 Cal.2d 807, at page 813 [122 P.2d 892]: "In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a

final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" The Supreme Court then cites certain cases and states that "to the extent that they are inconsistent with this opinion, are overruled."

It is true that although respondents in the present action, other than respondent Baker Divide Mining Company, were not parties to the ejectment action, yet appellant was a party to said action and set up a separate defense in his answer containing substantially the same allegations as are in his complaint in the instant action. It would seem, therefore, that under the decision in *Bernhard* v. *Bank of America, supra*, there is strong support for the court's finding that the issues in the instant action were adjudicated against appellant in the former action. However, in view of the fact that all of the issues were fully tried in the instant action, and we have hereinbefore held that the court correctly determined upon sufficient evidence that appellant was in default under the option agreement and that his rights thereunder were terminated in accordance with said agreement, we deem it unnecessary to decide whether the judgment in the former action is res adjudicata as to the issues in the present action.

No other points raised require discussion.

We are convinced that the following quotation from the able memorandum opinion of the trial judge is fully supported by the record:

"In the plaintiff's complaint filed March the 24th, 1945, he alleges his ability and willingness to pay any amount which the Court may find due from him. Such belated offer after his long default, since July 1, 1941, and never before communicated to defendants, viewed in the light of his past inexcusable failure to comply with the terms of payment required by the option; the notice of default and cancellation hereinbefore noticed, comes with little force or evidentiary value. He had ample time and opportunity to make a valid tender in 1938 and 1942, if he had at those times the financial ability to cure the default, or intended in good faith to cure his default. To give such offer serious consideration that would affect this action would be condoning and excusing his long defaults, allowing him to speculate with other people's property at no expense to himself after the property had been disposed of to others and values had changed. Specific performance is only allowed in the interest of justice, and before the principles of equity may be appealed to for

relief by way of specific performance, one must have a just and equitable cause of action, which plaintiff has failed to demonstrate in this action.''

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied November 30, 1953, and appellant's petition for a hearing by the Supreme Court was denied December 30, 1953.